**Brian VUKADINOVICH,**
**Plaintiff–Appellant,**

v.

**Timothy McCARTHY, et al.,**
**Defendants–Appellees.**

**Brian VUKADINOVICH,**
**Plaintiff–Appellant,**

v.

**Michael KRAWCZYK, Timothy McCarthy and Porter County Sheriff's Department, Defendants–Appellees.**

**Nos. 89–2019, 89–2171.**

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 17, 1990.

Decided May 14, 1990.

Rehearing and Rehearing En Banc Denied
June 13, 1990.

---

Brian Vukadinovich, Wheatfield, Ind., for plaintiff-appellant.

Elizabeth A. Brown, Judge & Knight, Park Ridge, Ill., Robert A. Welsh, Harris, Welsh & Lukmann, Chesterton, Ind., for defendants-appellees.

Thomas D. Quigley, Office of the Atty. Gen., Indianapolis, Ind., for James A. Sarkisian, Daniel R. Berning, State of Ind.

James G. Clark, Asst. Atty. Gen., Office of the Atty. Gen., Indianapolis, Ind., for Porter County Prosecutor's Office.

William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, Ill., for David K. Lippens, William Collins, Valparaiso Police Dept.

Terrance A. Hilliard, John L. Gubbins, Gubbins & Associates, Chicago, Ill., for Brian Vukadinovich.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff Brian Vukadinovich appeals the verdicts in favor of defendants Timothy McCarthy, the Porter County Sheriff's Department ("PCSD"), and Michael Krawczyk denying various constitutional claims under 42 U.S.C. § 1983. In a separate action consolidated on appeal, Vukadinovich appeals the district court's denial of his motion to reconsider under Rules 59 and 60 and the imposition of sanctions under Rule 11.[1] For the reasons stated below, we affirm.

## I.

On the evening of November 26, 1983, Vukadinovich attended a party in Michigan City, Indiana. While at the party, he consumed one can of beer and part of another. He left the party at 11:00 p.m. with no beer in his vehicle and started to drive to Valparaiso, Indiana.

Officer Krawczyk of the PCSD was working the 4:00 p.m. to 12:00 p.m. shift that night as a patrol officer. At 11:50 p.m. Krawczyk observed Vukadinovich's vehicle approaching in a thirty-five mile per hour speed zone and twice measured his speed with radar at seventy-one miles per hour. He pursued Vukadinovich as Vukadinovich changed lanes, cutting in and out of traffic at speeds up to 85 miles per hour.

The pursuit ended when Vukadinovich, in response to the officer's lights, finally pulled his vehicle to a stop. Officer Krawczyk asked Vukadinovich for his license and registration and inquired whether Vukadinovich thought he could lose him in traffic. Vukadinovich responded by asking Krawczyk if he was being charged with fleeing. Krawczyk then asked him to exit his vehicle and perform a field sobriety test consisting of touching his finger to his nose. Vukadinovich failed the test.

Krawczyk then asked Vukadinovich to get into his squad car while he ran standard procedure checks on Vukadinovich's driver's license, registration and license plates over the radio. Krawczyk asked him if he had been drinking and he said no. Vukadinovich contends that Krawczyk then took a beer can from under the front seat of the squad car and demanded that Vukadinovich drink it. He claims he pretended to drink the beer but when Krawczyk realized that he was not drinking the beer, Krawczyk struck his ribs and left jaw, breaking his jaw.

While Vukadinovich's version of the events in the squad car remain in dispute, it is undisputed that while in the squad car, Krawczyk smelled the odor of alcoholic beverages on Vukadinovich. He then advised Vukadinovich that probable cause existed to believe he had operated his vehicle while intoxicated and requested that Vukadinovich submit to a chemical test. Krawczyk read Vukadinovich the implied consent warning which stated that failure to take the chemical test would result in suspension of his driving privileges for one year. Vukadinovich did not indicate that he would take the test. When a second officer arrived, Vukadinovich was again read the implied consent warning (this time in the presence of a witness) and finally Vukadinovich agreed to take the test. Vukadinovich was then transported to the Porter County Jail to take the test.

Upon arrival at the Porter County Jail, Vukadinovich was instructed to perform

1. Vukadinovich has moved pursuant to Rule 34 for oral argument in both of these cases. We believe that our decision would not be aided by oral argument and consequently decide the case on the briefs.

the breath test by blowing air into the mouthpiece of the machine. Vukadinovich puffed his cheeks as if he were blowing air into the machine. If air is delivered, a piston within the air chamber will rise to an up position and a light on the machine turns on. The piston did not rise and the light did not turn on, so Krawczyk told Vukadinovich that he believed that the test had been faked and that if he did not deliver air into the machine, he would have to be arrested for driving under the influence by reason of his refusal to take the test. Vukadinovich now claims that he could not take the test because of his broken jaw, but he did not inform anybody at the jail that he was medically unable to take the test (he claims out of fear), and he refused to attempt to take the test a second time. Consequently, Vukadinovich was arrested and booked for driving under the influence.

Vukadinovich refused to cooperate at the booking. He would not give his name, and the information had to be obtained from his driver's license. He also refused to provide information about his employer or his occupation and would not sign his fingerprint card. When Vukadinovich asked the jailer for medical treatment, he was provided with a medical screening questionnaire but refused to provide the information requested. When asked why he needed medical treatment, he refused to answer.

At that time, PCSD had a written procedure for the delivery of medical care to prisoners in the jail. The policy required jailers to inform the Warden, Deputy Chief, or Sheriff only when there was a need for a prisoner to receive medical care. One of these people would then decide whether to permit the prisoner to be released for treatment. To assist jailers in determining ailments or injuries, they were provided with and required to follow the format of a medical screening form. If an inmate had a medical problem, the jailers were required to discuss the problem and obtain an explanation from the inmate. At the time, all jailers employed in the Porter County Jail were trained in CPR and some were trained as emergency medical technicians.

Pursuant to this policy, the jailor told Vukadinovich that he could not receive medical treatment unless he filled out the questionnaire or at least indicated the reason he needed the treatment. Because Vukadinovich had no visible symptoms of a problem and refused to fill out a questionnaire or answer questions about his condition, he was not offered medical treatment.

Vukadinovich was then placed in a holding cell. From this point (sometime around midnight) until about 6:00 a.m., Vukadinovich demanded a phone call but did not complain about medical problems. At 6:00 a.m. Vukadinovich again demanded medical treatment, but still refused to indicate what, if anything, was wrong with him. Finally, Vukadinovich indicated that the side of his stomach and throat hurt. No cuts, bleeding, or indication of pain were observed and he was not released for care. By 8:30 a.m., Vukadinovich had posted bond and left the jail. He promptly went to a hospital where he was treated for a broken jaw.

The next day, Vukadinovich filed a complaint against his jailers and Officer Krawczyk. Sheriff McCarthy ordered an investigation of Vukadinovich's complaint. A seventeen page statement was taken from Vukadinovich and at the conclusion of Vukadinovich's statement, Officer Krawczyk was advised to bring the car he used during the November 26 arrest to the jail. A thorough search was conducted of the car and no beer cans or pop tops were found. No wetness or odor was detected and the car had not been cleaned recently. Vukadinovich's personal physician was interviewed and his medical records were obtained. Jail incident reports were procured from the jailers on duty that night. Finally, Sheriff McCarthy personally interviewed Officer Krawczyk regarding the arrest and Vukadinovich's allegations. This investigation did not verify Vukadinovich's complaints and no action was taken against Krawczyk.

Vukadinovich also filed a complaint against Krawczyk with the FBI. Vukadinovich met with an FBI agent, and gave him a statement. The FBI investigated the

complaint and exonerated Krawczyk of the charges.

Vukadinovich then brought this § 1983 suit against Krawczyk, McCarthy, and the PCSD. He claimed that he was arrested without probable cause and maliciously prosecuted in violation of the fourteenth amendment and that Krawczyk struck him, also in violation of the fourteenth amendment. Finally, he claimed that the PCSD had a policy that caused this deprivation of rights in violation of the fourteenth amendment under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). He asked for one million dollars in damages and ten million dollars in punitive damages. At the close of his case, the district court granted a directed verdict on the arrest without probable cause, malicious prosecution, and *Monell* counts, leaving for the jury the issue of whether Vukadinovich was struck by Krawczyk. The jury returned a verdict in favor of Krawczyk. Vukadinovich appeals alleging that certain statements during trial by the judge and opposing counsel prejudiced his case and that the district court abused its discretion in granting the directed verdict on the *Monell* count.

The second case in this consolidated appeal arises out of the animus created by the above suit. In a *pro se* complaint against several municipal and state defendants, Vukadinovich claimed a group of police departments and officers, including those involved in the prior suit, defamed him by circulating false information. The claim was for simple defamation, but was brought under § 1983 and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g. The district court dismissed the claim on November 28, 1988, because simple defamation had been repeatedly held to be non-actionable under § 1983, *see Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bone v. City of Lafayette*, 763 F.2d 265 (7th Cir.1985), and the Family Educational Rights and Privacy Act only gives students and their parents access rights to their educational records and has no relationship to the complaint. On December 16, 1988, 18 days after the dis-

missal order had been filed, Vukadinovich filed a motion to reconsider or alternatively to amend the complaint. In addition, defendant Valparaiso, Indiana, sought attorney's fees and Rule 11 sanctions. The district court denied Vukadinovich's motion because it was not filed within the 10 day time limit under Rule 59(e), found the litigation frivolous and granted Valparaiso's motion on April 17, 1989. Vukadinovich appealed and we ordered briefing on the jurisdiction of this court. On June 23, 1989, we held that we would entertain no arguments directed to the November 28, 1988, dismissal order since Vukadinovich's appeal was untimely. We stated that appeal would be "limited to a review of the district court's April 17 order," which held that Vukadinovich did not comply with the time limits of Rule 59 and granted Rule 11 sanctions.

## II.

■ Vukadinovich argues that he put forth sufficient evidence to prove that the PCSD had a deliberate policy of not training its jailers and police officers in proper medical treatment of prisoners in violation of his constitutional rights. Under *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation. It is only when the "execution of the government's policy or custom ... inflicts the injury" that it may be held liable under § 1983. *Id.* In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court applied *Monell* to the situation where the municipality fails to train its police. It held that "inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Id.* 109 S.Ct. at 1204. The issue is "whether [the] training program is adequate, and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 1205.

Vukadinovich must, therefore, establish that the evidence, taken as a whole, provides a sufficient basis upon which a reasonable jury could conclude that the PCSD was deliberately indifferent to training its officers about medical care for prisoners.

■ Vukadinovich has not met this burden. The evidence elicited at trial revealed that the PCSD had adopted a standard policy for rendering medical care to prisoners. This policy required the jailers to inform the Warden, Deputy Chief, or Sheriff any time there was need for a prisoner to receive medical care. To assist the jailers in determining ailments or injuries, they were provided with a medical screening questionnaire to be used with all incoming prisoners. In conjunction with the completion of the information on the medical screening form, the jailers were required to discuss with the prisoner his medical problem and obtain an explanation. Needed medical care would be obtained either from the prisoner's own physician or nearby Porter Memorial Hospital. The jailers employed by the PCSD had all been trained in CPR and some were emergency medical technicians. Moreover, it was reasonable for the PCSD to require mentally alert and physically able prisoners to complete a medical screening form to prevent them from fabricating a need for medical care to gain temporary relief from confinement. The PCSD was far from deliberately indifferent to training its officers; it established and implemented a reasonable training policy.

■ Vukadinovich raises a second *Monell* claim. He complains that an allegedly inadequate investigation of his complaint constituted a policy which sanctioned the physical abuse he claimed he received from Officer Krawczyk. He states that the alleged failure to investigate "was a sufficient single act which made the defendants McCarthy and the [PCSD] liable for the unconstitutional acts of its agents." This argument fails both as a matter of law and on its facts. Primarily, Vukadinovich has not claimed that the failure to investigate

caused the injury. That a particular officer violated PCSD policy and might have been disciplined is not enough. *See Harris* 109 S.Ct. at 1206. It must be proven that the deficiency in the investigation actually caused the police officer's conduct. Here, there is no allegation or evidence that more complete investigations would have prevented the alleged physical abuse in this instance. Even if the causation argument were made, Vukadinovich has not alleged that the PCSD had a policy of inadequate investigations. *"Monell* teaches that the city may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (plurality opinion). Vukadinovich has put forth no evidence of a prior or subsequent history of failing to investigate claims against officers. Vukadinovich, therefore, fails to argue that PCSD had a *policy* which *caused* his constitutional deprivation. Assuming the requisite arguments had been made, they would most likely fail on a factual basis. Vukadinovich characterizes the investigation as a simple acceptance of Krawczyk's word, yet the facts do not support such a characterization. The PCSD took a seventeen page statement from Vukadinovich, made a thorough inspection of the squad car, and required written statements from a variety of people who observed Vukadinovich that night, including the jailers, people who attended the party, and the officer who assisted in the arrest. Vukadinovich's doctor and peers at work were contacted and Krawczyk was personally interviewed. The facts do not support a claim that the investigation was inadequate. We conclude that Vukadinovich has not put forth sufficient evidence to sustain his *Monell* counts.

■ Vukadinovich's claim that comments by the trial judge and opposing counsel prejudiced his case is also without merit. Vukadinovich complains that when the trial judge granted a directed verdict to McCarthy and the PCSD, he told the jury that "Mr. McCarthy and the Police Department are no longer parties to this lawsuit. That

should not concern you and that should not be any part of your deliberations." Similarly, opposing counsel stated in closing arguments that McCarthy and the PCSD were dismissed from the case. Vukadinovich claims that the prejudicial impact of these statements to his case denied him a fair trial and constitutes reversible error. We disagree. The trial court's instruction to the jury that two of the parties had been dismissed was appropriate and Vukadinovich did not object to the statement at that time, thus waiving the issue for appeal. *Erff v. Markhon Indust. Inc.*, 781 F.2d 613, 618 (7th Cir.1986). In addition, if there was any error caused by the statements, it was harmless.

■ In the second case, Vukadinovich argues that the district court erred in denying his Rule 59(e) motion and in granting Rule 11 sanctions. Rule 59(e) provides that "[a] motion to alter or amend judgment shall be served not later than 10 days after entry of the judgment." Vukadinovich's motion was not filed within the 10 day period. The district court cannot extend the time for making a Rule 59(e) motion. *Greene v. Bisby*, 869 F.2d 1070, 1072 (7th Cir.1989). Vukadinovich could have filed a Rule 60(b) motion alleging mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or any of a variety of other reasons outlined in the rule, but he did not. His status as a *pro se* litigant does not save his case. *Pro se* litigants are entitled to have their pleadings liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), but his motion fails to provide any grounds upon which a Rule 60(b) motion might be granted. The district court properly denied the motion to reconsider.

■ Vukadinovich's objection to the Rule 11 sanctions is based on his status as a *pro se* litigant. Rule 11, however, "appl[ies] to anyone who signs a pleading, motion or other paper." FED.R.CIV.P. 11, Notes of Advisory Committee on Rules, 1983 Amendment. Status as a *pro se* liti-

gant may be taken into account, but sanctions can be imposed for any suit that is frivolous. "Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations." *Id. See Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir.1988). Vukadinovich's claim is frivolous even when his *pro se* status is taken into account. It is well-settled that a claim for common law defamation may not be brought under § 1983. *Paul*, 424 U.S. at 712, 96 S.Ct. at 1166. Vukadinovich does not and cannot allege the loss of a property or liberty interest resulting from the defamation. The Family Educational Rights and Privacy Act offers no possibility of relief either. We cannot conclude that the district court abused its discretion in awarding sanctions. Similarly, we cannot find an abuse of discretion by the district court in awarding attorney's fees under 42 U.S.C. § 1988.[2] Appellees' motion for attorney's fees in this court is denied.

### III.

For the foregoing reasons, the decisions of the district courts are AFFIRMED.

---

**2.** Vukadinovich also argues that the district judge should have recused himself because he had previous knowledge of Vukadinovich's character. The judge, however, specifically lim-

ited his consideration of earlier events to his finding that Vukadinovich was no stranger to the litigation process and, therefore, the judge took no improper actions.