Harold E. SIVARD, Jr., Plaintiff,

v.

PULASKI COUNTY, et al., Defendants.

No. S89–204 (RLM).

United States District Court, N.D. Indiana, South Bend Division.

Nov. 30, 1992.

Grace H. Han, Indianapolis, IN, for plaintiff.

Frank E. Tolbert, Logansport, IN, for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the defendants' motion for summary judgment. For the reasons that follow, the court finds that the defendant are entitled to summary judgment on all remaining claims.

### I.

Mr. Sivard originally brought a diversity suit, under state law only, against Pulaski County, Indiana, the Pulaski County Sheriff's Department, Pulaski County Sheriff Charlotte Ward–Tillett (both individually and in her official capacity), and Dr. Rex Allman, M.D.[1] Mr. Sivard sought relief for wrongful detention, negligent and willful failure to provide him with timely medical care, and Dr. Allman's misdiagnosis of his back injury. This court dismissed Mr. Sivard's action because he failed to provide the defendants with timely notice as required by the Indiana Tort Claims Act, but allowed Mr. Sivard to amend his pleadings. Without altering the wording of the wrongful acts, Mr. Sivard amended his complaint to allege a violation under 42 U.S.C. § 1983.

Thereafter, the defendants moved for summary judgment and Mr. Sivard failed to respond to the motion. This court granted the defendants summary judgment on all claims and Mr. Sivard appealed. The United States Court of Appeals for the Seventh Circuit affirmed the judgment on Mr. Sivard's claims for delayed medical treatment and Dr. Allman's alleged malpractice, but reversed and remanded this case on the issue of wrongful detention. *Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992).

On remand, the defendants[2] again move for summary judgment. Mr. Sivard filed no written response, but presented argument at the hearing on the motion.

### II.

The standards for summary judgment were set forth in detail in the earlier opinions of this court and the court of appeals, and need not be repeated. The court assumes familiarity with the case's facts and sets forth only those facts relevant to the issue of wrongful detention. All dates refer to 1987 unless otherwise indicated.

On February 2, at 5:15 p.m., the Pulaski County Sheriff's Department received a call that a man was out of control and violent. Deputy Sheriff John Duhnovsky answered the call and arrested Mr. Sivard for the crime of battery at approximately 6:47 p.m. Shortly after arresting Mr. Sivard, Officer Duhnovsky radioed the Indiana State Police Post at Lowell, Indiana, to initiate a records search. At 7:07 p.m., Officer Duhnovsky called Mrs. Ruth Duke, Mr. Sivard's former wife, and learned that Mr. Sivard might have been involved in a kidnapping that took place in Massachusetts.

At 7:19 p.m., Officer Duhnovsky called the West Springfield, Massachusetts Police Department ("WSPD"), which confirmed Mrs. Duke's report of Mr. Sivard's involvement in a kidnapping. The WSPD also informed Officer Duhnovsky that a grand jury in Massachusetts had indicted Mr. Sivard for the crime of kidnapping and that Mr. Sivard was wanted for that felony. The WSPD requested that the Pulaski County Police Department detain Mr. Sivard for extradition by Massachusetts.

---

1. Mr. Sivard initially brought suit against Dr. John Doe, who was subsequently identified as Dr. Allman.

2. Because the court of appeals affirmed the grant of summary judgment on all the issues concerning Mr. Sivard's medical care, Dr. Allman no longer is a party to this action.

On February 3, Officer Duhnovsky informed Daniel P. Murphy, Pulaski County's Prosecuting Attorney, of Mr. Sivard's arrest the previous night and also that Mr. Sivard was wanted for kidnapping in Massachusetts. Mr. Murphy advised Officer Duhnovsky that because the crime of kidnapping was substantially more serious than the arrest for battery, Pulaski County would hold Mr. Sivard pursuant to Massachusetts' oral request for extradition. Mr. Murphy instructed Officer Duhnovsky to notify the Massachusetts authorities that Pulaski County was holding Mr. Sivard, and determine whether Massachusetts was willing to extradite Mr. Sivard.

On February 4, Mr. Murphy was notified that the Massachusetts authorities wanted to extradite Mr. Sivard and would provide the necessary documentation as quickly as possible to substantiate Pulaski County's hold on Mr. Sivard. The documentation was to include the certified copy of the warrant of indictment. Because Massachusetts wanted Mr. Sivard for a major felony, Mr. Murphy decided that Pulaski County would not proceed on the misdemeanor battery charges; instead, Pulaski County would hold Mr. Sivard for extradition to Massachusetts. Mr. Murphy requested that the Pulaski County Sheriff's Department hold Mr. Sivard for extradition.

About two weeks later, Mr. Murphy learned that the Massachusetts authorities had not yet provided any documentation to substantiate the kidnapping charge. Therefore, on February 19, Mr. Murphy filed the battery charges against Mr. Sivard, who appeared in person for an initial hearing. Between February 2 (the date of Mr. Sivard's arrest) and February 19 (the date that battery charges were filed), the Pulaski County Sheriff's Department and Deputy Prosecuting Attorney Lisa Traylor–Wolff contacted the Massachusetts authorities a number of times regarding the extradition of Mr. Sivard. At the February 19 hearing, bond was set at $2,500.00. Because Mr. Sivard apparently was unable to post the bond, Pulaski County continued to detain him.

On March 24, Mr. Sivard waived extradition to Massachusetts on the charges of kidnapping, assault and battery with a deadly weapon, and assault with a deadly weapon. Mr. Sivard was released from the Pulaski County jail for extradition to Massachusetts on March 27. Indiana dismissed the battery charge on April 2.

As stated above, the defendants have moved for summary judgment on the remaining issue of wrongful detention.

### III.

In granting the defendants' previous summary judgment motion, this court found that there was no wrongful detention because the defendants detained Mr. Sivard pursuant to Indiana's Uniform Criminal Extradition Act ("Indiana's Extradition Act"). The Seventh Circuit reversed, finding a question of fact existed regarding exactly when the defendants knew of the charges pending against Mr. Sivard in Massachusetts, and when the defendants knew that the Massachusetts authorities wished to extradite Mr. Sivard. Specifically, the court of appeals stated that:

> It is possible that such a lengthy detention, unjustified by Sivard's arrest for battery, might have been justified if carried out in response to a request from Massachusetts for Sivard's extradition. It is undisputed that Massachusetts had indicted Sivard two months before his arrest in Indiana, and that Massachusetts issued an arrest warrant one month *after* his arrest in Indiana. What remain unknown is *when* Pulaski County and its officials learned of the charges against Sivard in Massachusetts. A detention while awaiting extradition cannot be justified as such *until* the detaining state is aware of the other state's desire to try the detainee for another crime. If the defendants explain, and defend, their lengthy detention of Sivard as pre-extradition detention, they must show that they actually held him with the knowledge that he was wanted in another state. They have not done this.

\*     \*     \*     \*     \*     \*

The officials who detained Sivard have not explained at what point they detained him pursuant to the extradition request of Massachusetts; we cannot say when the procedural requirements of the Extradition Act would begin to apply.

*Sivard v. Pulaski County*, 959 F.2d at 665–66 (emphasis in original).

In their renewed summary judgment motion, the defendants have established that they knew of the charges in Massachusetts against Mr. Sivard within two hours after his arrest. The Pulaski County Sheriff's Department received the call about Mr. Sivard at 5:15 p.m. on February 2 and arrested him shortly thereafter. At 7:19 p.m., the WSPD informed Officer Duhnovsky that a grand jury in Massachusetts had indicted Mr. Sivard for the crime of kidnapping and that Mr. Sivard was wanted for that felony. The WSPD also requested that the Pulaski County Police Department detain Mr. Sivard for extradition by Massachusetts. Thus, two hours after Mr. Sivard's arrest, Officer Duhnovsky knew of the Massachusetts charges pending against Mr. Sivard and also knew that Massachusetts wanted Mr. Sivard detained for extradition.

The defendants also have shown that they knew on February 4, at the very latest, that Massachusetts wanted to extradite Mr. Sivard. On February 3, Officer Duhnovsky informed Mr. Murphy that Mr. Sivard was wanted for kidnapping in Massachusetts. Mr. Murphy advised Officer Duhnovsky that Pulaski County would hold Mr. Sivard pursuant to Massachusetts' oral request for extradition. Mr. Murphy instructed Officer Duhnovsky to notify Massachusetts authorities that Pulaski County was holding Mr. Sivard, and to determine whether Massachusetts was willing to extradite Mr. Sivard.

On February 4, Mr. Murphy was notified that Massachusetts authorities wanted to extradite Mr. Sivard and that they would be providing the necessary documentation as quickly as possible to substantiate Pulaski County's hold on Mr. Sivard. Because Massachusetts wanted Mr. Sivard for a major felony, Mr. Murphy decided that Pulaski County would not proceed on the misdemeanor battery charges; instead, Pulaski County would hold Mr. Sivard for extradition to Massachusetts.

On February 4, Mr. Murphy told the Sheriff's Department to hold Mr. Sivard for extradition. Thus, at some time between February 2 and February 4, all the defendants had learned of the Massachusetts charges pending against Mr. Sivard and that Massachusetts wanted to extradite Mr. Sivard. The defendants were merely waiting for the documentation necessary to extradite Mr. Sivard to arrive from the Massachusetts' authorities. From February 4 (at the very latest) until his extradition, the defendants were holding Mr. Sivard at the request of the Commonwealth of Massachusetts.

#### A.

The defendants first argue that they did not violate Mr. Sivard's constitutional rights. The court of appeals' opinion suggests that to prevail the defendants must establish exactly when they knew of the Massachusetts charges pending against Mr. Sivard, and when they knew that the Massachusetts' authorities wished to extradite Mr. Sivard:

> A detention while awaiting extradition cannot be justified as such *until* the detaining state is aware of the other state's desire to try the detainee for another crime. If the defendants explain, and defend, their lengthy detention of Sivard as pre-extradition detention, they must show that they actually held him with the knowledge that he was wanted in another state. They have not done this.

*Sivard v. Pulaski County*, 959 F.2d at 665 (emphasis in original). The court also stated, however, that once the defendants learned that Massachusetts desired to extradite Mr. Sivard, the procedural requirements of Indiana's Extradition Act began to apply. *Sivard v. Pulaski County*, 959 F.2d at 666 ("The officials who detained Mr. Sivard have not explained at what point they detained him pursuant to the extradition request of Massachusetts; we

cannot say when the procedural requirements of the Extradition Act would begin to apply.")

In their renewed motion, the defendants state that Mr. Sivard's detention was not wrongful, as a matter of law, because Mr. Sivard was being held pursuant to Indiana's Extradition Act, IND.CODE 35-33-10-3. The defendants, however, have not presented facts that establish that they complied with the provisions of Indiana's Extradition Act.[3]

The purpose of Indiana's Extradition Act is to provide an "orderly means whereby states can assist each other, or in certain instances be compelled to assist each other, in bringing to justice criminals who have violated the laws of a state or states other than that in which the criminal is being held." *Martin v. State*, 176 Ind.App. 503, 376 N.E.2d 498, 500 (1978). The procedural sections of Indiana's Extradition Act that apply to the present case are IND.CODE 35-33-10-3(15) and (16), which provide:

(15) The arrest of a person may be lawfully made also by an officer or a private citizen without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one (1) year; but when so arrested the accused must be taken before a judge with all practicable speed, and complaint must be made against him under oath setting forth the ground for the arrest as in the last proceeding subsection; and thereafter his answer shall be heard as if he has been arrested on warrant.

(16) If from the examination before the judge, it appears that the person held is the person charged with having committed the crime alleged and that he

probably committed the crime, and, ... that he has fled from justice, the judge shall commit him to jail by a warrant reciting the accusation for such time specified in the warrant as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in subsection 17 of this section, or until he shall be legally discharged.

Because Mr. Sivard was arrested without a warrant, subsection 15 required that he be taken before a judge with all practicable speed, and have a complaint made against him under oath setting forth the ground for the arrest. *See* IND.CODE 35-33-10-3(15); *see also Lovejoy v. State*, 148 Vt. 239, 531 A.2d 921, 924 (1987) (where a fugitive is arrested without a warrant, the accused must be taken before a judge as soon as practicable). While the defendants could have held Mr. Sivard in jail for a reasonable period of time to allow Massachusetts to furnish the necessary documentation, IND.CODE 35-33-10-3(16)[4], subsection 16 requires that a judge make the determination whether or not to commit a fugitive to jail after a hearing.

One reason for the hearing before a judge with all practicable speed is to ensure that the person to be extradited is the same person alleged to have committed the crime in the demanding state. *Desjarlais v. State*, 73 Wis.2d 480, 243 N.W.2d 453, 458 (1976) (the fugitive should be taken before a judge or magistrate with all practicable speed to ensure that the accused is the person charged with committing the foreign crime and alleged to have left the foreign state). Additional reasons for a hearing before a judge or magistrate after

---

**3.** The defendants have not cited any new case law supporting their detention of Mr. Sivard. The court of appeals found that the three cases relied upon by this court in its earlier opinion were not applicable. *See Sivard v. Pulaski County*, 959 F.2d at 665-66.

**4.** Subsection 16 allows a judge to commit a fugitive to jail for such time as will enable the arrest of the accused to be made under a warrant of the governor of the demanding state.

IND.CODE 35-33-10-3(18) allows the judge to recommit the fugitive for a second period, should Indiana authorities still be waiting for a warrant from the governor of the demanding state. Although Indiana does not specify the time limitation of such detention, the Uniform Criminal Extradition Act, adopted by nearly all the states, provides that such detention can last up to ninety days. *See, e.g.*, Ill.Ann.Stat. ch. 60, ¶¶ 32, 34 (Smith–Hurd 1989).

a warrantless arrest for extradition purposes would appear similar, if not the same, as the reasons for an initial appearance after any warrantless arrest. According to the Seventh Circuit:

> Almost every element of a "first appearance" under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent. The following is a listing of traditional components of a first appearance ... and the rights enforced by them: (1) inform the suspect of the charge ...; (2) inform the defendant of the right to counsel and determine if the defendant is indigent and desires the assistance of appointed counsel ...; (3) inform the suspect of the right to remain silent under the privilege against self-incrimination ...; (4) set or review bail.... An extended detention before a first appearance, whether or not there has been a valid determination of probable cause, substantially impinges upon and threatens all of these rights. The significant benefit resulting from the interposition of a neutral judicial officer into the post-arrest detention situation with regard to the protection of these rights cannot be ignored. Although the absence of a first appearance here may not have caused a specific violation of any of these rights as they have been interpreted by the Supreme Court, the ultimate effect of the omission here must be deemed a denial of due process. The tremendous burden placed upon a presumptively innocent person by this type of prolonged detention cannot be permitted without more regard for that person's basic rights under the Constitution.

*Coleman v. Frantz,* 754 F.2d 719, 724 (7th Cir.1985) (citations omitted).

Although *Coleman* did not involve the initial appearance before a judge under the Uniform Criminal Extradition Act, the same reasoning applies. *See, e.g., Commonwealth v. Diggs,* 351 Pa.Super. 444, 506 A.2d 431, 435 (1986), *appeal denied,* 515 Pa. 592, 528 A.2d 601 (1987) (an accused's presentation with all practicable speed before a neutral judicial authority for extradition helps to deter or curtail abusive, coercive, or otherwise unlawful activity such as prolonged custodial interrogation).

The period of time between a warrantless arrest and initial appearance before a neutral judicial officer when an extradition request pends presents a noticeably different situation than when only an intrastate arrest is involved. The information necessary for preparation of the fugitive complaint and for presentation at the initial hearing must be obtained from another jurisdiction and reasonable delays are to be anticipated. Here, however, there is no indication that Mr. Sivard received any type of hearing regarding his extradition until March 24, seven weeks after his warrantless arrest.

■ Mr. Sivard received a hearing on the Indiana charges pending against him on February 19. After the February 19 hearing, the defendants lawfully held Mr. Sivard on the Indiana charge. The sole issue remaining becomes whether the seventeen-day detention between Mr. Sivard's warrantless arrest and his initial hearing on the Indiana crime can be justified as a pre-extradition detention. In remanding the case, the court of appeals noted:

> The Supreme Court has "held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." Last year the Court held that a 48–hour detention before an appearance before a judicial officer will generally comply with the Fourth Amendment's requirement of promptness. After 48 hours, however, the general rule changes:
>
> > Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the govern-

ment to demonstrate the existence of a bona fide emergency or other extraordinary circumstances.

We read the Court's opinion in *County of Riverside [v. McLaughlin* [— U.S. —, —], 111 S.Ct. 1661, 1668 [114 L.Ed.2d 49] (1991),] to state that an unexplained detention of 17 days before being charged with the crime for which the detainee is held is presumptively unconstitutional.

*Sivard v. Pulaski County*, 959 F.2d at 666 (citations omitted).

The defendants have not established that Mr. Sivard was brought before a judge or magistrate for an initial hearing of any type until February 19. *Sivard v. Pulaski County*, 959 F.2d at 668. They state that Mr. Sivard was being held pursuant to a request for extradition and when delays were encountered in the extradition process, Mr. Murphy filed charges against Mr. Sivard based upon the Indiana misdemeanor. Thus, Mr. Sivard was held from February 2 to February 19 pursuant to the requests of Massachusetts and Prosecuting Attorney Murphy, and after February 19 for both the Massachusetts and Indiana charges. The defendants appear to contend that because they detained Mr. Sivard pursuant to a oral request for extradition, the seventeen-day delay between his arrest and the initial hearing was justified.

The flaw in the defendants' analysis is that they were holding Mr. Sivard pursuant to a warrantless arrest. Whether Mr. Sivard was being held for extradition or for the crime he committed in Indiana, he was still entitled to a prompt hearing before a neutral judicial officer. Under Indiana's Extradition Act, Mr. Sivard was entitled to be "taken before a judge with all practicable speed." IND.CODE 35–33–10–3(15). For his arrest on the Indiana battery charge, Mr. Sivard also had the right to be "taken promptly before a judicial officer." IND.CODE 35–33–7–1. The Supreme Court has held that detaining an accused on a warrantless arrest for more than 48 hours is presumptively unconstitutional, and to justify such action the government has the burden of demonstrating the existence of a bona fide emergency or other extraordinary circumstances. *County of Riverside v. McLaughlin*, — U.S. —, —, 111 S.Ct. 1661, 1668, 114 L.Ed.2d 49 (1991).

The defendants have presented no facts establishing that a bona fide emergency or extraordinary circumstance required them to hold Mr. Sivard for seventeen days before an initial hearing. The alleged delay in bringing Mr. Sivard before a judge appears to be due to Massachusetts' failure to provide the necessary documentation to support the kidnapping charge. The defendants apparently made a number of contacts with the Massachusetts authorities regarding the documentation's status; after receiving no documentation after two weeks, Mr. Murphy decided to charge Mr. Sivard with the Indiana crime. The Massachusetts authorities' laxity in providing the necessary documentation does not represent an "emergency or extraordinary circumstance." *See Commonwealth v. McCaine*, 218 Pa.Super. 274, 275 A.2d 867, 868 (1971) (laxity of demanding state in furnishing proper documents did not excuse failure to provide prisoner with basic protection required by the Uniform Criminal Extradition Act).

The defendants could have brought Mr. Sivard before a neutral judicial officer long before seventeen days had expired. For example, in *In re Ropp*, 149 Vt. 154, 541 A.2d 84 (1987), a Vermont state police officer stopped a fugitive because of a bald tire. A records check revealed that the fugitive was wanted in Wisconsin for nonpayment of child support. The fugitive was taken before a judge two days later. At that initial hearing, the state's attorney represented that the information supporting detention of the fugitive had been furnished to him via telephone. The court found that the information sufficiently established that the fugitive probably committed the crime and justified continued detention. *In re Ropp*, 541 A.2d at 85. By using this method, the state's attorney insured that the fugitive had a prompt hearing before a neutral judicial officer.

The Massachusetts authorities could have mailed the necessary documentation to the defendants. For example, in *State v. Hughes*, 68 Wis.2d 662, 229 N.W.2d 655 (1975), after the demanding state was notified that the defendant had been arrested, the demanding state sent the necessary extradition documents to the asylum state by mail. The documents took three days to arrive to the asylum state, during which time the defendant was held without an initial hearing before a judge. The court held that a four-day delay from a warrantless pre-requisition arrest to appearance before a judge was not unreasonable. 229 N.W.2d at 663. The court stated that although an undue delay between warrantless pre-requisition arrest and initial appearance before judge raises due process question, the delay's reasonableness must be determined with regard to facts and circumstances of each case. 229 N.W.2d at 663; *see also Wheeler v. Stynchcombe*, 234 Ga. 240, 215 S.E.2d 244 (1975) (three day delay before being brought before magistrate not unreasonable).

Here, the defendants simply held Mr. Sivard pursuant to a warrantless arrest for seventeen days before any type of initial hearing before a neutral judicial officer. The only explanation given for this delay is that the defendants were awaiting the necessary documentation from the Massachusetts authorities. This justification for holding Mr. Sivard for seventeen days prior to a hearing does not comport with *County of Riverside v. McLaughlin*.

■ As stated earlier, compliance with the procedures under the Indiana Extradition Act may require more time than the usual intrastate arrest. It may be difficult to arrange the transmission of necessary documentation between state authorities pursuant to an extradition request. The court also acknowledges the State's interest in protecting public safety by taking into custody those persons reasonably suspected of having engaged in criminal activi-

ty. *County of Riverside v. McLaughlin*, — U.S. at —, 111 S.Ct. at 1668. These concerns must be balanced, however, against Mr. Sivard's right against prolonged detention based upon what could be incorrect or unfounded suspicion that may unjustly imperil his job, source of income, or family relationships. *Id.*

The court does not hold that the defendants' failure to bring Mr. Sivard before a judge under the extradition charge within 48 hours of his warrantless arrest was unconstitutional, or renders the defendants liable to Mr. Sivard. The court holds that the defendants have not presented facts justifying, as a matter of law, their seventeen-day detention of Mr. Sivard before an initial hearing. This prevents a finding of summary judgment in the defendants' favor on the claim of wrongful detention.

### B.

Defendants Pulaski County, the Pulaski County Sheriff's Department, and County Sheriff Charlotte Ward–Tillett, in her official capacity,[5] contend that they are not liable because Mr. Sivard has not established that they had a policy or custom responsible for the deprivation of his rights. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Markley v. Walters*, 790 F.Supp. 190 (N.D.Ind.1992).

■ Under the principles first announced by the Supreme Court in *Monell*, municipalities may be held liable under § 1983 for constitutional violations caused by their official policies, including unwritten customs. Municipalities cannot be held liable, however, for the actions of their officials solely on theory of *respondeat superior*. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Gray v. Dane County*, 854 F.2d 179, 182–84 (7th Cir.1988). Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present. *Strauss v. City of Chicago*, 760

---

**5.** Official capacity claims are the equivalent of claims against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dept. of Social*

*Services of the City of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978).

**640**

F.2d 765, 767 (7th Cir.1985). At the very least, there must be some affirmative link between the policy and the particular constitutional violation alleged. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy which can be attributed to a municipal policymaker. *Oklahoma City v. Tuttle,* 471 U.S. at 824, 105 S.Ct. at 2436; *Vukadinovich v. McCarthy,* 901 F.2d 1439, 1443 (7th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 761, 112 L.Ed.2d 780 (1991). To hold the defendants liable under § 1983, Mr. Sivard must establish that the alleged constitutional deprivations resulted from municipal policy. *Patrick v. Jasper County,* 901 F.2d 561, 565–66 (7th Cir.1990).

Although the court of appeals found that Mr. Sivard's allegations approached the "level of boilerplate vagueness", the court nonetheless remanded the case because:

> Without uncontroverted evidence of the length of his detention, and without the remaining question of when, and how, Pulaski County officials inquired into and learned of the Massachusetts indictment of Sivard, ... we might affirm the district court's summary dismissal of Sivard's contention that his detention was the product of some policy or custom. But we are not without such evidence and such remaining questions; *we find that the inexplicable nature of Sivard's detention* makes it seem within the realm of probability that some official policy was responsible for his excessively long detention.

*Sivard v. Pulaski County,* 959 F.2d at 668–69 (emphasis added).

As stated above, the Pulaski County Sheriff's Department and Sheriff Ward–Tillett knew on February 2 that Mr. Sivard was wanted on kidnapping charges in Massachusetts. By February 4, all the defendants knew that Massachusetts wanted to extradite Mr. Sivard and that the Massachusetts authorities "would be providing the documentation necessary as quickly as possible to substantiate" the defendants' hold on Mr. Sivard. Also on February 4, Mr. Murphy, the prosecuting attorney, instructed the defendants to hold Mr. Sivard pursuant to Massachusetts' oral request for extradition without the necessity of filing an affidavit for battery. Between February 4 and February 19, there were a number of contacts made with the Massachusetts authorities by the Pulaski County Sheriff's Department and the prosecutor's office regarding Mr. Sivard's extradition.

Thus, the nature of Mr. Sivard's detention is no longer "inexplicable". The defendants have answered the questions of when, and how, Pulaski County officials inquired into and learned of the Massachusetts indictment of Mr. Sivard. Mr. Sivard's detention was not pursuant to any official policy or custom; instead, his detention was based upon the request of the Massachusetts authorities to hold Mr. Sivard for the Commonwealth of Massachusetts for the crime of kidnapping.

At the hearing on this motion, Mr. Sivard maintained that the defendants bear the burden of disproving the existence of a policy or custom. The court does not agree that the court of appeals placed such a burden on the defendants. Because the defendants have answered the questions of when, and how, Pulaski County officials inquired into and learned of the Massachusetts indictment, and because they have shown that Mr. Sivard's hold was not pursuant to an official custom or policy, Mr. Sivard had the burden of establishing facts to the contrary.

Mr. Sivard has done nothing more than to rest upon his complaint's conclusory allegations regarding the defendants' customs or policies. A complaint that merely tracks *Monell*'s requirement of official policy with bare allegations cannot stand in the absence of any supporting facts. *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 202 (7th Cir.1985). At this point, Mr. Sivard must do more than rest upon conclusory allegations in his complaint; he must show facts which establish a custom or policy. He has presented no facts that

would support an inference that the defendants had a custom or policy of unconstitutionally detaining persons upon oral requests for extradition. It follows that Mr. Sivard also failed to establish an "affirmative link" between any alleged policy and the alleged unconstitutional incident. *Oklahoma City v. Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436.

Summary judgment for defendants Pulaski County, the Pulaski County Sheriff's Department, and Sheriff Ward–Tillett in her official capacity must be granted. Accordingly, the court need not consider Pulaski County's additional argument that under *Markley v. Walters*, 790 F.Supp. 190, Mr. Sivard cannot maintain an action against it for alleged injuries sustained in a county jail because the jail is not under county executives' control, or Sheriff Ward–Tillett's additional argument that she is not liable in her official capacity because the Eleventh Amendment to the Constitution precludes an action against the Sheriff of Pulaski County.

### C.

■ Mr. Sivard's personal capacity claim against Sheriff Ward–Tillett merely alleges that the Sheriff knew of his wrongful detention and continued to detain him in spite of that knowledge. The court of appeals held that this was sufficient to satisfy his burden for summary judgment and that the Sheriff's mere denial of such knowledge was not enough. *Sivard v. Pulaski County*, 959 F.2d at 668. Sheriff Ward–Tillett now contends that despite any alleged personal involvement, she is immune from suit under the doctrine of qualified immunity, citing *Coleman v. Frantz*, 754 F.2d 719 (7th Cir.1985).

■ Individual liability under § 1983 must be based on personal responsibility. *Archie v. Racine*, 847 F.2d 1211 (7th Cir. 1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Morales v. Cadena*, 825 F.2d 1095 (7th Cir.1987). Sheriff Ward–Tillett may be held liable under § 1983 in her individual capacity only if she caused or participated in the constitutional deprivation; a causal connection or affirmative link between the conduct and the defendant must exist. *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). An official is personally liable if (1) she participated directly in the constitutional deprivation, (2) she acts or fails to act with reckless disregard for the plaintiff's constitutional rights, or (3) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with her knowledge and consent. *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985).

■ Under qualified immunity, however, government officials generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Felce v. Fiedler*, 974 F.2d 1484, 1500–01 (7th Cir.1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *Coleman v. Frantz*, 754 F.2d at 725. Knowledge of a general right is insufficient to invoke liability; rather, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Felce v. Fiedler*, 974 F.2d at 1500 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

When the Supreme Court and the Seventh Circuit have attempted to ascertain whether a constitutional right is a clearly established one, the analysis utilized has required caselaw which clearly and consistently recognizes the constitutional right. *Coleman v. Frantz*, 754 F.2d at 730 n. 15. This test focuses upon the state of the law at the time of the alleged violation. *Felce v. Fiedler*, 974 F.2d at 1500; *Zook v. Brown*, 748 F.2d 1161, 1164 (7th Cir.1984).

Qualified immunity implements two mutually dependent rationales; the need to encourage the vigorous exercise of official authority as required by the public good, and the need to avoid unfairly subjecting the official to liability for the good faith exercise of discretion pursuant to a legal obligation. *Coleman v. Frantz*, 754 F.2d at 727–28. As a general rule, sheriffs enjoy the protection of qualified immunity. *Coleman v. Frantz*, 754 F.2d at 726. To

succeed, the sheriff must demonstrate that, based on the objective circumstances at the time she acted, her actions were undertaken pursuant to the performance of her duties and within the scope of her authority. *Coleman v. Frantz*, 754 F.2d at 728.

As stated above, Sheriff Ward–Tillett contends that despite any alleged personal involvement, she is immune from suit under the doctrine of qualified immunity, citing *Coleman v. Frantz*, 754 F.2d 719. In *Coleman*, the plaintiff brought a § 1983 action against a sheriff because of the plaintiff's eighteen-day detention prior to an initial appearance. During this time, the plaintiff asked the sheriff several times when he was going to court, and also protested his innocence. In turn, the sheriff repeatedly called the prosecutor's office to arrange for the plaintiff's first appearance, but received no reply until the eighteenth day, when the prosecutor told the sheriff to release the plaintiff. The prosecutor had taken no action until the eighteenth day, despite his early knowledge of the plaintiff's detention.

The court held that an eighteen-day detention without an appearance before a judge or magistrate denied the plaintiff due process of law, *Coleman v. Frantz*, 754 F.2d at 723, but affirmed the grant of summary judgment for the sheriff based on qualified immunity. 754 F.2d at 725. The *Coleman* court held that the sheriff was entitled to qualified immunity because the sheriff's conduct did not violate a clearly established constitutional right. *Coleman v. Frantz*, 754 F.2d at 730–31. The court of appeals could not find a case that expressly held that a constitutional violation was caused by the failure to afford the an initial appearance after arrest pursuant to a valid warrant. *Coleman v. Frantz*, 754 F.2d at 730.

Like the sheriff in *Coleman*, the actions of Sheriff Ward–Tillett did not violate any "clearly established" constitutional rights that Mr. Sivard possessed based upon the state of the law at the time of the alleged violation. *Felce v. Fiedler*, 974 F.2d at 1500. Mr. Sivard has pointed to no case establishing a clear violation of the Constitution when a law enforcement officer, in good faith, detains a fugitive for extradi-

tion pursuant to an oral request from a sister state; nor has the court found any. The Indiana Extradition Act cannot define a federal constitutional right.

Although *Coleman* held that an eighteen-day delay prior to an appearance before a judge violated the accused's due process rights, *Coleman* does not clearly establish that Mr. Sivard's detention was unconstitutional. *Coleman* presented a significantly different factual situation than the present case. First, and most importantly, *Coleman* did not involve the detention of a fugitive pursuant to an extradition request from another state. Second, *Coleman* did not interpret the extradition laws of Indiana or any other state. Third, the warrant in the *Coleman* case explicitly provided that the accused be taken before a judge; there was no such clear signal in the present case.

Liability should not accrue to Sheriff Ward–Tillett for her good faith exercise of discretion that did not violate a clearly established constitutional right that Mr. Sivard possessed at the time of the alleged violation. *Coleman v. Frantz*, 754 F.2d at 727–28. Summary judgment for Sheriff Ward–Tillett in her personal capacity should be granted.

Because the court finds that summary judgment should be granted in the defendants' favor, the court declines to address the issue of whether Mr. Sivard can receive damages for any harm after February 19. In addition, the court declines to address the defendants' claim that Sheriff Ward–Tillett and the Sheriff's Department are entitled to absolute immunity of a prosecutor because they held Mr. Sivard at Mr. Murphy's request. The court notes, however, that the cases cited by the defendants are not persuasive.

## IV.

Accordingly, for the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

SO ORDERED.