NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2007[*]
Decided September 14, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

Nos. 06-3364 & 06-3448

| | |
|---|---|
| JEFFREY M. MORTLE, *Plaintiff-Appellant, Cross-Appellee*, | Appeals from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 05-CV-117 |
| UNITED PARCEL SERVICE, *Defendant-Appellee, Cross-Appellant*. | J. P. Stadtmueller, *Judge*. |

**O R D E R**

Jeffrey M. Mortle, who has been blind in one eye since birth, worked for United Parcel Service (UPS) for 16 years and was fired in 2003 after being seriously injured with a box cutter while horsing around with a coworker. Mortle responded to his discharge by claiming, first in a charge of discrimination filed with the EEOC

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal and cross-appeal are submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

and its Wisconsin counterpart, and then in a pro se lawsuit under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213, that his partial blindness was the real reason he was terminated.  The district court granted summary judgment for UPS but denied the company's demands for attorneys' fees under the ADA and sanctions under Federal Rule of Civil Procedure 11.  The parties have filed cross appeals.

At summary judgment UPS principally argued, and the district court agreed, that the undisputed evidence established that Mortle was not disabled within the meaning of the ADA, *see Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) (noting that physical impairment must substantially limit major life activity in order to qualify as disability under ADA), and that his horseplay, not his monocular vision, was the reason for his termination, *see Timmons v. GMC*, 469 F.3d 1122, 1126 (7th Cir. 2006) (stating that when employer articulates a legitimate nondiscriminatory reason for adverse employment action, employee must show that reason is pretext for discrimination); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006) ("In order to be pretextual, the proferred reasons must be a 'lie.'").  Most of the company's evidence came from Mortle's deposition: he acknowledged that his partial blindness never stopped him from playing sports or doing other things that he enjoys.  Except for the loss of peripheral vision on his left side and some distortion of his depth perception, he functions normally; he can read, write, watch TV, work, drive, use tools, and complete household chores and personal care without assistance.  His visual impairment, he conceded, is "not a major disability."  In response to a question about whether he thought he was wrongly discharged because of his visual impairment, Mortle responded: "No. . . .  I thought that it might have been part of my disability.  I don't know if I can honestly prove that, but also that I was just wrongfully discharged in general. . . .  I'm not necessarily saying it was because of my disability, but I felt I shouldn't have got discharged."  Later he admitted that he had no evidence that his termination was due to his impairment, and he submitted no evidence of his own to defeat summary judgment.

On appeal Mortle only fleetingly mentions his partial blindness and his belief that he suffered discrimination because of it.  His brief actually focuses on how he believes that UPS treated him unfairly by firing him when, in his view, he was the innocent victim of the coworker who wielded the boxcutter.  Mortle does not argue that the district court committed any error in its analysis, and because he does not challenge the court's reasoning, his appeal must fail.  *See* Fed. R. App. P. 28(a)(9); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (dismissing appeal because pro se litigant failed to provide any "articulable basis for disturbing the district court's judgment").

What remains is UPS's cross-appeal.  The company argued that it should receive its attorneys' fees under 42 U.S.C. § 12205, which permits an award of

attorneys' fees to the prevailing defendant in an ADA suit that is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (interpreting 42 U.S.C. § 2000e-5(k)); *see* 42 U.S.C. § 12117(a) (incorporating § 2000e-5, part of Title VII, into the ADA).  UPS also argued that Rule 11 sanctions should be awarded because Mortle's claim was not reasonably based in fact or supported by existing law, given his admissions during his deposition.  *See* Fed. R. Civ. P. 11(b).  In rejecting both requests, the district court acknowledged that "Mortle's ADA discrimination claim lacks foundation," but still the court declined to award either fees or Rule 11 sanctions with the explanation that Mortle understandably "felt he was the victim of some injustice" given that he was "terminated from a job he valued after he was injured at work."  The court also took into account Mortle's lack of legal training and his limited financial resources.  We review the court's conclusions regarding fees and sanctions for abuse of discretion.  *See CUNA Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006); *Sanglap v. Lasalle Bank, FSB.*, 345 F.3d 515, 520 (7th Cir. 2003).

The district court did not abuse its discretion by denying UPS attorneys' fees and sanctions.  A finding that an ADA claim lacks foundation does not necessarily mean that the employer is entitled to fees.  *See Adkins v. Briggs & Stratton Corp.*, 159 F.3d 306, 307 (7th Cir. 1998).  Section 12205 *permits* the court, in its discretion, to award fees and costs to a prevailing party, but does not mandate such an award.  In exercising its discretion, the court may weigh equitable considerations, such as the employee's ability to pay, and award no fee as it deems appropriate.  *See Adkins*, 159 F.3d at 307-08; *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (vacating fee award because district court did not take into account civil rights plaintiff's financial resources).  Mortle was proceeding in forma pauperis, had no assets except his car, and was earning just $9.95 an hour at Jewel-Osco.  Given Mortle's extremely limited financial resources, the district court was well within its discretion to deny UPS attorneys' fees.

Similarly, Rule 11 authorizes sanctions where a party presents the court with a pleading or other paper "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," is not "warranted by existing law" or is lacking in evidentiary support.  Fed. R. Civ. P. 11(b).  The central purpose of Rule 11 is to "deter abusive litigation practices." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1013-14 (7th Cir. 2004) (upholding denial of sanctions where district court did not believe that claims were "filed in bad faith or for an improper purpose or without adequate investigation").  The 1993 Advisory Committee Notes to Rule 11 counsel that courts may consider whether the improper conduct was "willful or negligent," whether the responsible person is "trained in the law," and the responsible person's financial resources.  *Cf. Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990) (upholding

sanctions against pro se litigant for frivolous claim but maintaining that courts may take pro se status into account when considering sanctions); *see also DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005) (affirming district court's denial of monetary sanction where party lacked ability to pay).  In this case the district court concluded that Mortle's discrimination claim lacked foundation, but it did not find that Mortle was aware of its legal insufficiency.  Instead, the court recognized Mortle's lack of legal training and "understandable" feeling that he was the victim of "injustice."  Given that there has been no showing that Mortle acted with anything other than a genuine belief that he had been wronged, we cannot say that the district court abused its discretion by denying sanctions.

The judgment in each appeal is AFFIRMED.