Application of Junior Lloyd CAUDILL for Writ of Habeas Corpus.

No. A–12856.

Court of Criminal Appeals of Oklahoma.

Feb. 17, 1960.

Rehearing Denied June 15, 1960.

 
██

Judd Black, Oklahoma City, for petitioner.

James W. (Bill) Berry, County Atty., Raymond E. Theimer, Asst. County Atty., Oklahoma City, for respondent.

BRETT, Judge.

This is an original action in habeas corpus brought by Junior Lloyd Caudill in which he alleges he is being unlawfuly restrained by the Sheriff of Oklahoma County, Oklahoma. The cause of said restraint he alleges is an arrest of himself without a warrant as a fugitive from the State of Louisiana by two agents of the Oklahoma Crime Bureau in Perry, Noble County, Oklahoma, on May 14, 1959, without thereafter taking him before a committing magistrate or judge as provided by law. 22 O.S.1951 § 1141.14. The record shows that instead of so doing, he was removed to Oklahoma County, Oklahoma, and imprisoned, "held for Sheriff of Baton Rouge, La. Time: 8:30 p. m. May 14, 1959." Thereafter, the petitioner was claimed by Oklahoma County authorities to finish the service of an old incompleted jail sentence and fine which he had avoided by escaping in 1949 while serving as a trusty. On May 20, 1959, the Governor of Louisiana requisitioned Oklahoma for custody of the petitioner for the crime of automobile theft, committed in Louisiana December 13, 1958. On May 27, 1959, the Governor of Oklahoma issued his warrant of foreign requisition in favor of the State of Louisiana for the delivery of petitioner, Junior Lloyd Caudill, to the State of Louisiana.

It further appears that the Sheriff of Oklahoma County temporarily suspended the enforcement of the Governor's extradition warrant by refusing to execute it until such time as the old judgment had been satisfied, and notified the Sheriff of Baton Rouge Parish the petitioner's time would expire on January 20, 1960. At no time from the petitioner's arrest and incarceration on the request of the Sheriff of Baton Rouge Parish, Louisiana, did the Oklahoma authorities take the petitioner before a magistrate or judge until he filed a petition for habeas corpus on July 1, 1959, before the Honorable Clarence Mills, Judge of the District Court of Oklahoma County. The petition was denied. On said July 1, 1959, the Governor's extradition warrant was served, but not executed.

 The petitioner asserts under the provisions of 22 O.S.1951 § 1141.14 (Uniform Criminal Extradition Act § 14, 9 U.L.A. 330), he was denied due process of law. Said section reads:

"The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one (1) year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant."

Under the provisions of the statute, and the right to due process, a failure to take such person before a committing magistrate or judge "with all practicable speed" amounts to a denial of a fundamental right. The statute provides that the person so arrested without a warrant shall be brought before a magistrate or judge "with all practicable speed" and "complaint must be made against him under oath" and thereafter he shall be heard "as if he had been arrested on a warrant." Under this feature of the case, the question thus presented is, what is meant by the term "all practicable speed?" It would be most presumptious on our part to attempt to define or limit this term. It suffices to say that each such case must be determined upon the facts and circumstances therein involved. Certainly, non-compliance with the provisions of the statute,

under the within facts, is not conduct in keeping with the term "all practicable speed." The provisions of 22 O.S.1951 § 1141.14 in the foregoing regard are in keeping with the general tenor of the law that one arrested, with or without a warrant, for a felony, must be taken before a magistrate without unnecessary delay, 22 O.S.1951 § 181, in the county where the arrest was made, to there be immediately informed by the magistrate of the charge against him and his right to aid of counsel, etc. 22 O.S.1951 § 251. Such provisions of the law, including 22 O.S.1951 § 1141.14, are mandatory. They are made for the benefit of the accused, and unless waived by him, a denial thereof constitutes a denial of due process and voids the proceeding by which he was incarcerated, including the arrest. Under the facts of this case, evidencing a total failure of the officers to comply with the requirements of the statute, there can be no other logical conclusion than that the petitioner was denied due process under the law by the arresting officers' failure to take him before a magistrate in Noble County. This is in keeping with the statement appearing in syllabus four of Great American Indemnity Company v. Beverly, D.C., 150 F.Supp. 134:

"An officer arresting fugitive from justice of another state without warrant must take him before magistrate as soon as possible without unnecessary delay, and if he does not do so within reasonable time, his subsequent imprisonment of fugitive is illegal."

The complications of this case do not end with the foregoing conclusion. The arresting officers' failure to comply with the statute in the foregoing regard wiped the procedural slate clean up until the time the petitioner was booked in at the Oklahoma County jail to complete service of his outstanding sentence. Had petitioner presented his writ of habeas corpus prior to this time, he would apparently have been entitled to his release. However, the Oklahoma County Sheriff having his escaped prisoner in custody, he was within the law in holding him on the uncompleted judgment and sentence. The petitioner was not entitled to a writ of habeas corpus so long as he was being so held. Ex parte Tollison, 73 Okl.Cr. 38, 117 P.2d 549.

While the petitioner was so in custody, on July 1, 1959, the Governor's extradition warrant was served on him. An apparent conflict arises between the Governor's warrant and the state's right to require the petitioner to complete service of the old judgment and sentence which he was then serving. The asylum state has the right to require the satisfaction of its sentence before complying with the demands of a requisitioning state. State v. Saunders, 288 Mo. 640, 232 S.W. 973, 975, sets the rule out in the following language:

"This much has been definitely settled, that where a demand is properly made by the Governor of one state upon the Governor of another, for the surrender of a fugitive, the duty so to do is not absolute and unqualified, but depends upon the circumstances of each particular case. If the law of the state in which asylum has been sought has been violated by the fugitive, and he has been convicted there, and is undergoing sentence, the demands of the law thus violated may be first satisfied before obedience to the constitutional provision to surrender him arises."

An exception to this rule, applicable herein, is stated in 35 C.J.S. Extradition § 11, p. 328, as follows:

"However, * * * it is usually held that the executive of the asylum state may waive the right of that state to retain the prisoner, and may surrender him to the demanding state, * * * after his conviction and while he is still undergoing, or subject to, punishment in the asylum state."

State v. Saunders, supra; Johnson v. Lowry, 183 Ga. 207, 188 S.E. 23; State v. Allen, 2 Humph. 258, 21 Tenn. 258.

The Louisiana Governor's requisition was in no way affected by what had preceded it. It was in no way affected by the Crime Bu-

reau Agents' aborted attempt at custody on behalf of the Sheriff of Baton Rouge Parish, Louisiana. The decisive question as applied to the facts in this case is in whom was the authority to determine this issue of custody of the petitioner, the local Sheriff, or the Governor of the asylum state? In short, does the Sheriff have a right to temporarily delay by pocket veto the Governor's extradition warrant until a local judgment and sentence is satisfied by the petitioner? The logic of People ex rel. Gallagher v. Hagan, 34 Misc. 85, 69 N.Y.S. 475, 477, impresses us as a solution. It is therein stated:

"In the very nature of things, it is desirable that the power should rest somewhere in the state to refuse to give up a prisoner until he has satisfied the claims of the state against him, or to waive the enforcement of those claims, and surrender him to another state for the satisfaction of its laws. If such power did not exist, a criminal might easily evade or postpone his just punishment for the gravest of crimes committed in one state by the commission of a crime of much less magnitude in another. If a state may waive the enforcement of its claims upon a prisoner, in favor of the claims of another state upon him, it becomes important to determine who is authorized to act for the state in that regard. * * * In the case of a person held for an offense against the criminal law, there are no private rights to be considered and no claims to be satisfied except those of the state. The question whether or not those claims ought to be waived in favor of the claims of a sister state is no longer a question for the judicial, but the executive, branch of government. Indeed, the determination of the question, in the case of a prisoner convicted of a crime, as is the relator, rests necessarily with the governor; for even if the court should deem it to be its duty to release a convicted prisoner from the operation of a writ of extradition, because he owed the state a term of imprisonment in consequence of his conviction, the governor, if for any reason he deemed the extradition to be desirable, could by a pardon wipe out the conviction, the debt due to the state, and the only obstacle to the enforcement of the writ. * * * Practically, therefore, it rests with the executive power of the state to determine whether a person who has committed crimes both in this state and in another should be held here to answer before he is extradited, or be extradited without considering the charge against him here, and in determining that question the offender has no voice, and will not be heard. In the present case the governor, by issuing the writ of extradition, had determined that this relator should be sent to answer for his crime in New Jersey. With his reason for that determination the court has nothing to do."

This extradition warrant of the Governor of Oklahoma in favor of Louisiana is without limitations. If the Governor of Oklahoma had desired to require completion of the service of the unsatisfied portion of petitioner's sentence, he could have done so. This he did not do. Possibly it was because he was not aware of its existence. In any event, it was not for the local Sheriff to pigeon-hole the order of the highest executive authority of the state. Once the Governor had spoken, it was no longer within the Sheriff's power to ignore his order. What had been done was within the Governor's power to do. In re Butler, Okl.Cr., 346 P.2d 348. The Sheriff's act in holding petitioner after issuance of the Governor's extradition warrant was an invasion of the Governor's power. Under that warrant the State of Louisiana was entitled to custody of petitioner. The most the Sheriff could have done under the premises was to have called the Governor's attention to the partially unsatisfied judgment and sentence so that the Governor could have recalled or modified the extradition order under such conditions as the law permits. 22 O.S.1951 § 1141.25; In re Butler,

supra. In any event, the Governor's order is the highest executive voice within the state and may not be ignored under the within conditions by a lesser member of the executive family.

Finally, it clearly appears that there was no invalidity in the custody of the petitioner by the Sheriff of Oklahoma County until the Governor's warrant for his return to Louisiana had been issued. When the Governor's extradition warrant was served on July 1, 1959, it should have been executed and the petitioner. delivered to the Louisiana authorities. It is so ordered.

POWELL, P. J., and NIX, J., concur.