STATE, Respondent, v. HUGHES, Appellant.

*No. State 174.   Argued May 6, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 655.)

For the appellant there was a brief by *Robert J. Ruth* and *Noll, Donovan, Bolgrien & Ruth,* all of Beloit, and oral argument by *Robert J. Ruth.*

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Robert D. Martinson,* assistant attorney general, and oral argument by *Michael R. Klos,* assistant attorney general.

CONNOR T. HANSEN, J. This is an extradition case concerning the sufficiency of the fugitive complaint and challenging the length of detention between the arrest and the initial appearance before a judge. September 11, 1974, the trial court entered an order denying the motion of Marvin P. Hughes, defendant, to dismiss the fugitive complaint and quashing a petition for a writ of habeas corpus. Hughes appeals.

No rendition warrant has been issued by the governor of the state of Wisconsin,[1] and Hughes has been at liberty on bail since his petition for a writ of habeas corpus was quashed by the trial court.

On Saturday, August 17, 1974, at 3:56 p.m., the Beloit police department received a teletype message from Batesville, Mississippi, informing them that warrants had been issued in Mississippi for the arrest of the defendant for assaulting a police officer by pointing a deadly weapon at him. The message stated that the defendant was in Beloit and that the warrants had been mailed. Pursuant to that message, the defendant, a resident of Beloit, was arrested and incarcerated at 7:45 p.m. that same day. Batesville was notified of the arrest by teletype message at 8:31 p.m.

The arresting officer, Philip John Licary, testified that defendant told him, when arrested, that the mayor of Batesville permitted the defendant to leave the state on the defendant's assurance that he would return for his trial. Inspector John M. Mizerka of the Beloit police department testified that he had been told that the defendant intended to waive extradition. He admitted, however, that he had not been told this by the defendant.

On Sunday, August 18, 1974, at 9:21 a.m., a further teletype message was sent to Batesville authorities informing them that the defendant had stated he would

---

[1] *See: State ex rel. Holmes v. Spice,* ante, p. 263, 229 N. W. 2d 97, which relates to proceedings after the issuance of a rendition warrant by the governor of the asylum state.

waive extradition and that the Beloit police wanted the warrants for a 9 a.m. court appearance on Monday morning.

On Monday, August 19, 1974, Inspector Mizerka had a phone conversation with the mayor of Batesville. The mayor was told that the police believed the defendant would waive extradition at his appearance before the court but that they needed the warrants. The mayor informed Inspector Mizerka that the warrants had been sent on Saturday afternoon, and that they should arrive on Tuesday morning. Inspector Mizerka had told Mr. Krueger, the lawyer then representing the defendant, that an appearance on Monday would be impossible as the warrants had not yet arrived, but that he would inform Krueger when the appearance was set.

The warrants and affidavits arrived in Beloit on Tuesday morning, August 20, 1974, and were immediately sent to the district attorney's office for preparation of the fugitive complaint. At 4 p.m. on that date, the police were served with a writ of habeas corpus demanding the production of the defendant before the trial court. The writ was prepared by lawyer Robert J. Ruth, who has represented the defendant since that time.

On Wednesday, August 21, 1974, the defendant appeared before the trial court at which time the fugitive complaint was filed. The complaint stated:

"George Gerhardt, being first duly sworn, on information and belief says that on or about the 4th day of August, 1974, at Panola County, State of Mississippi, the said Marvin P. Hughes, was charged with the commission of a crime, to-wit: did wilfully, unlawfully and feloniously commit an assault upon Walter G. Murphree with a deadly weapon, to-wit: a Colt .38 caliber pistol, while he, the said Walter G. Murphree, a police officer, was lawfully attempting to arrest said Marvin Hughes.

"That the said Marvin P. Hughes has fled from justice in said state to the State of Wisconsin and that this affidavit is made pursuant to Section 976.03 of the

Wisconsin Statutes and prays that the said Marvin P. Hughes may be dealt with and arrested according to law." [Formal parts omitted.]

The fugitive complaint was read to the defendant, the defendant was advised of his right to counsel, bail was set, and the hearing continued until Friday, August 23, 1974. The defendant was remanded to the custody of the sheriff.

At the subsequent hearing, it was established that George Gerhardt was a police officer in the Beloit police department. Further, the above related testimony concerning the history of the case was presented.

Based on the testimony received, the complaint, the return to the writ, and the arguments of counsel, the trial court held the complaint sufficient and the delay in bringing the defendant before the court reasonable. The motion to dismiss the fugitive complaint was denied and the writ of habeas corpus quashed.

The following issues are dispositive of this appeal:

1. Did the trial court err in concluding that the fugitive complaint was sufficient?

2. Was the defendant brought before the court with all practicable speed following his arrest?

*Complaint.*

Interstate extradition is primarily governed by federal law finding its roots in art. IV, sec. 2 of the federal constitution as implemented by federal statute, 18 USCA, sec. 3182. *Smith v. State of Idaho* (9th Cir. 1967), 373 Fed. 2d 149, 152; and *United States v. Meyering* (7th Cir. 1934), 75 Fed. 2d 716, 717, rehearing denied (1935). That section relates to the issuance of a rendition warrant by the governor of the asylum state. The states, however, have the power to enact statutes which are ancillary to and in aid of the federal constitution and

statute. *State ex rel. Foster v. Uttech* (1966), 31 Wis. 2d 664, 669, 143 N. W. 2d 500, certiorari denied, 385 U. S. 956, 87 Sup. Ct. 392, 17 L. Ed. 2d 303.

The defendant initially contends that the Uniform Criminal Extradition Act, the governing law in Wisconsin, sec. 976.03, Stats., is not applicable to this action because the demanding state, Mississippi, has not enacted that act. *See:* Uniform Criminal Extradition Act (11 ULA), p. 51. Defendant relies on the following quotation from *Commonwealth ex rel. Patton v. Tees* (1955), 179 Pa. Super. 605, 608, 118 Atl. 2d 585:

> "But appellant's rights were not violated in any respect in his surrender to a United States Marshal under the writ of habeas corpus ad prosequendum. The Uniform Criminal Extradition Act, *supra,* has application only between the states which adopted it and cannot be invoked to regulate the procedure by which a person is surrendered by a state to the jurisdiction of a federal court, there to answer criminal charges against him. . . ."

In our opinion, the *Tees Case* did not hold that the Uniform Criminal Extradition Act did not apply unless both the demanding state and the asylum state had passed the act. That case dealt with the issue of whether the uniform procedures governed an extradition proceeding involving the federal authorities.

The Wisconsin act does not contain a provision making its application conditional on passage of the same or a similar act by the demanding state. In other acts adopted by this state governing relationships with other states the desire to limit the act's application so as to govern only where the other state has the same or a similar law has been expressly stated as a condition. *See, e.g.,* Uniform act for the extradition of prisoners as witnesses, sec. 976.01 (2), Stats.; Uniform act for the extradition of witnesses in criminal actions, sec. 976.02 (2) ; Agreement on detainers, sec. 976.05; Inter-

state compact on mental health, sec. 51.75; Out-of-state parolee supervision, sec. 57.13; Revised uniform reciprocal enforcement of support act, sec. 52.10. The applicability of the Uniform Criminal Extradition Act is not affected in Wisconsin by the fact that the demanding state has not adopted that act.

It is undisputed that the initial arrest of the defendant in this case was conducted without the prior issuance of a Wisconsin warrant and was solely based on the information contained in the teletype message received from the Batesville authorities. Under such conditions, the requirements of sec. 976.03 (14), Stats., apply:

"(14) ARREST WITHOUT A WARRANT. The arrest of a person may be lawfully made also by an officer or a private citizen without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year; but when so arrested the accused must be taken before a judge with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in sub. (13) ; and thereafter his answer shall be heard as if he had been arrested on a warrant."

That section essentially codified the existing common law which permitted the police in one state, upon reasonable information that a person had committed a felony in another state, to arrest that person without a warrant when found in the asylum state. *State v. Klein* (1964), 25 Wis. 2d 394, 399, 130 N. W. 2d 816, certiorari denied, 380 U. S. 951, 85 Sup. Ct. 1083, 13 L. Ed. 2d 969. The arrest is known as a prerequisition arrest and is for the purpose of holding the defendant until a governor's requisition warrant can be issued upon the demanding state's initiation of extradition proceedings. *State ex rel. Wells v. Hanley* (1947), 250 Wis. 374, 27 N. W. 2d 373; sec. 976.03 (15), Stats. Under the statutory procedure, the prerequisition arrest can be accomplished with a

warrant, under sec. 976.03 (13), or without a warrant pursuant to sec. 976.03 (14).

However, regardless of whether the initial arrest is made with or without a warrant, the cross-referencing of sec. 976.03 (14) to sec. 976.03 (13), Stats., requires that a fugitive complaint be issued which states the grounds for the alleged fugitive's arrest. The requirements for the fugitive complaint are set forth in sec. 976.03 (13), as follows:

"(13) ARREST PRIOR TO REQUISITION. Whenever any person within this state shall be charged on the oath of any credible person before any judge of this state with the commission of any crime in any other state and, . . . with having fled from justice, . . ."

Thus, under sec. 976.03 (13) and (14), and the facts of this case, the fugitive complaint must be on the oath of a credible person, it must assert the commission of a crime in another state by the defendant, and it must charge that the defendant has fled from justice.

Following the arrest and the issuance of a fugitive complaint, sec. 976.03 (15), Stats., further provides that the judge, upon examination, must satisfy himself that the defendant is the person charged with the commission of the crime alleged and that the defendant has fled from justice. The judge must then issue a warrant, generally known as a prerequisition warrant, for the confinement of the defendant pending the issuance of the governor's requisition warrant. The subsequent incarceration cannot be ordered, and in this case was not, for more than thirty days. Sec. 976.03 (15).

Defendant's contentions with regard to the procedure under which he was incarcerated fall under two categories. It is first contended that the procedure does not meet the constitutional requirement of probable cause for the issuance of a prerequisition warrant. The second related contention is that the fugitive complaint is deficient under this court's decision in *State ex rel. Evanow*

*v. Seraphim* (1968), 40 Wis. 2d 223, 161 N. W. 2d 369, for failing to set forth sufficient facts for a finding of probable cause.

The defendant contends that under the fourth amendment of the federal constitution, it is encumbent upon the judge to make a determination with regard to probable cause before issuing the detention warrant prescribed by sec. 976.03 (15), Stats. The defendant relies upon *Kirkland v. Preston* (D. C. Cir. 1967), 385 Fed. 2d 670; *State v. Towne* (1970), 46 Wis. 2d 169, 174 N. W. 2d 251; and *State ex rel. Foster v. Uttech, supra.* These cases all present issues relating to the issuance of a rendition warrant by the chief executive of the asylum jurisdiction. Each recognized that the constitutional authority for the arrest by the asylum state lies in the validity of the procedures followed by the demanding state, as revealed by the requisition papers. Similarly, this court has indicated that the authority to make a prerequisition arrest also derives from the assumed regularity of the demanding state's compliance with correct charging procedures. *State v. Klein, supra,* pages 400, 401.

Generally, this court has held that the question of whether correct constitutional procedures had been followed by the demanding state in obtaining the arrest of the defendant was an issue to be raised in the demanding state, not the asylum state. *State ex rel. Foster v. Uttech, supra; State ex rel. Kojis v. Barczak* (1953), 264 Wis. 136, 141, 58 N. W. 2d 420, followed in *State ex rel. Lutchin v. Outagamie County Court* (1969), 42 Wis. 2d 78, 165 N. W. 2d 593, certiorari denied, 396 U. S. 856, 90 Sup. Ct. 121, 24 L. Ed. 2d 106. The *Kirkland, Towne* and *Uttech Cases* establish a limited exception to that rule and require an examination of the requisition papers from the demanding state to determine their facial validity under the constitutional require-

ments prior to the issuance of a requisition warrant by the chief executive.

The constitutional authority of the asylum state to effectuate an arrest under the Uniform Criminal Extradition Act is derived from the assumed compliance by the demanding state with the constitutional requirements governing probable cause for the issuance of a criminal arrest warrant, an assumption open to limited attack following the issuance of the governor's requisition warrant and subject to full attack only in the demanding state. In the instant case, there is sufficient probable cause to issue a prerequisition warrant for the defendant's detention. There is sufficient credible evidence to support the finding by the trial judge that the defendant is charged with a crime under the laws of another state and that he is a fugitive from that state.

We are not here concerned with the factual showing necessary to arrest a person for the alleged commission of a substantive crime. The prerequisition arrest is based, not on the fact that a crime has been committed and that the defendant did it, but that he has been charged with a crime in another state and that he is a fugitive from justice. Thus, the arrest focuses, not on the commission of the crime, but, on the fugitive status. Moreover, the permissible duration of the incarceration is limited to thirty days.

The factual requirements for the showing of probable cause is not the same in all instances. Thus, in a paternity suit, the facts which give rise to probable cause to arrest are different than in a criminal case, although in each case probable cause is required. *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 596, 597, 137 N. W. 2d 391. Also, the facts required to give rise to probable cause for a bindover at a preliminary examination are different than those required for the initial arrest of a defendant. *State v. Knoblock*

(1969), 44 Wis. 2d 130, 134, 170 N. W. 2d 781; *State v. Williams* (1970), 47 Wis. 2d 242, 248, 177 N. W. 2d 611.

In this case we are of the opinion sufficient probable cause was shown for the defendant's arrest, pursuant to sec. 976.03 (13), Stats., and the issuance of a prerequisition warrant, under sec. 976.03 (15).

The defendant also cites *State v. Williams, supra; State ex rel. White v. Simpson, supra;* and *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667. These cases all concern the standard of probable cause required for the arrest of a person for prosecution under the criminal statutes of the state of Wisconsin.

The arrest and prerequisition warrant under the Uniform Criminal Extradition Act focus primarily upon the fugitive status of the defendant and not the substantive crime.

The defendant's contentions with regard to the sufficiency of the fugitive complaint are, in part, linked to his position that there must be a finding by the judge that probable cause exists to believe that a crime has been committed and that the defendant has committed the crime. Thus, the defendant contends that the fugitive complaint does not contain within its four corners, or by reference to any other document or transcript, the date of the alleged crime in the state of Mississippi, or the specific location of the alleged crime, as required in *Day v. State* (1971), 52 Wis. 2d 122, 187 N. W. 2d 790, and *State ex rel. Evanow v. Seraphim, supra,* for complaints charging a substantive crime.

As stated above, we are of the opinion that the factual showing for a finding of probable cause to arrest and detain a fugitive on a prerequisition warrant differs from that required in the case of a criminal arrest. In this regard, compliance with sec. 976.03 (13), (14) and (15), Stats., is sufficient.

The fugitive complaint in this case is in strict compliance with the requirements of sec. 976.03 (13), Stats. It asserts that the defendant has been charged with committing the crime of felonious assault with a deadly weapon upon a police officer using a .38-caliber pistol while the police officer was lawfully attempting to arrest the defendant, in the county of Panola, state of Mississippi, and that the defendant has fled from justice into the state of Wisconsin. The complaint is signed by George Gerhardt, alleging that he was duly sworn and that the assertions of the complaint are upon information and belief.

The defendant also argues that the fugitive complaint does not set forth the source and reliability of the facts alleged on information and belief. Were this a regular criminal complaint, this court's holding in *Day v. State,* *supra,* would be controlling.

However, this is not a criminal complaint, but a fugitive complaint which serves a limited and statutorily defined purpose. Sec. 976.03 (13), Stats., provides that the complaint must be made upon the oath of any credible person. The statutory requirements with regard to this type of complaint are different than those required by a statute and common law for the issuance of a criminal complaint.

We are of the opinion that the fugitive complaint need not show on its face the source and reliability of the facts alleged on information and belief if such a showing is otherwise made to the satisfaction of the trial judge prior to the issuance of the prerequisition warrant.

In the present case, there is no question that the credibility of the complainant was established at the habeas corpus hearing prior to the issuance of the prerequisition warrant. So too, the return to the writ, which included the original arrest warrants from Mississippi

and the accompanying affidavits, plus copies of all the teletype messages between Beloit and Batesville, constitute sufficient credible evidence from which to judge the reliability of the allegations of the complaint made upon information and belief.

Therefore, the complaint was sufficient under the statute, and sufficient information was presented to the trial court to support its determination that there was the necessary probable cause to order the defendant's detention for thirty days pending the institution of formal extradition procedures.

*Delay in appearance.*

Sec. 976.03 (14), Stats., provides that upon the warrantless arrest of an alleged fugitive, he must be taken before a judge "with all practicable speed." In the present case, the defendant was arrested in the early evening of Saturday, August 17, 1974. The writ of habeas corpus was served on Tuesday, August 20, 1974, at 4 p.m. The defendant first appeared before a judge, pursuant to the writ at 9 a.m. on Wednesday, August 21, 1974.

The defendant contends that he was not brought before a judge "with all practicable speed." He relies primarily on *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525. In that case this court was concerned with the permissible length of detention for interrogation following an arrest for a criminal charge before presenting the defendant for arraignment. At page 470 of that case, this court stated:

"Upon its face, a detention from midnight Saturday until 10 a.m. Tuesday, without satisfactory explanation, would be unreasonable."

However, on the facts of that case, the detention was held to be reasonable.

The present case can be distinguished from the *Reimers Case* on the basis that the court is here concerned, not with detention for purposes of interrogation relative to a local crime, but detention of a fugitive from justice where the crime was committed in a foreign state. In *Commonwealth ex rel. Heaton v. Harvey* (1960), 21 Pa. D. & C. 2d 763, affirmed, 193 Pa. Super. 315, 164 Atl. 2d 123, it was determined that a detention of fifteen days between a warrantless prerequisition arrest and initial appearance, was not in violation of the all-practicable-speed requirement of the Uniform Criminal Extradition Act. It was emphasized that the additional time was necessitated by the need to obtain the full facts concerning the charge from North Carolina, the demanding state, in preparation for the hearing. *Commonwealth ex rel. Heaton v. Harvey, supra,* page 767.

It appears undisputed by the authorities that a detention found to be unreasonable raises a due process question and is properly a basis for voiding the proceeding, including the arrest, and releasing the defendant. *Application of Caudill* (Okla. 1960), 352 Pac. 2d 926, 928, 929. The reasonableness of the delay, however, must be determined with regard to the facts and circumstances in each case. *State v. Wallace* (1973), 59 Wis. 2d 66, 76, 77, 207 N. W. 2d 855; *Reimers v. State, supra,* pages 469–471; *Application of Caudill, supra,* page 928.

In the case before us it is undisputed that the criminal warrant and supporting documents were promptly mailed by Mississippi authorities on Saturday, the day of the initial teletype and the apprehension of Hughes by Wisconsin authorities. They were received the following Tuesday morning and immediately taken to the district attorney's office for preparation of the fugitive complaint. The writ of habeas corpus, served that afternoon, intervened.

There was also evidence that the defendant indicated his willingness to waive extradition. This was never denied by the defendant, who simply stated that he didn't remember ever saying he would waive extradition. On Monday, August 19, 1974, the defendant's lawyer, Krueger, was told by the police that the defendant was not to be taken before the judge until after the arrival of the warrants, expected on Tuesday. Krueger left instructions that he was to be contacted when the warrants arrived. These facts could reasonably have led the police to believe that the defendant was not pressing for an immediate hearing and that it was agreeable to the defendant that the hearing be held after the arrival of the warrants from Mississippi.

The record also reflects that the police spent some time attempting to verify the defendant's story that he had an agreement with the Batesville mayor that the defendant would return to Mississippi for his trial. Verification was requested by teletype on Saturday, August 17th, and the mayor was contacted on the phone on Monday, August 19, 1974.

The period of time which is reasonable where an extradition arrest is involved presents a different situation than when a local crime is involved. *See: Commonwealth ex rel. Heaton v. Harvey, supra.* Information necessary to the preparation of the complaint and for the presentation at the hearing must be obtained from another jurisdiction and reasonable delays are to be anticipated. Unlike in *Reimers v. State, supra,* the detention here is not for the purpose of interrogation but merely to hold the defendant pending extradition. Moreover, except for the desire to await the arrival of the warrants, there was no effort by the state to delay the hearing.

Under all the circumstances of this case, we are not impressed by the various arguments now advanced by Hughes as to possible alternatives available to the Wisconsin authorities to bring about his earlier appearance before the trial judge.

The delay, under the facts and circumstances of this case, was not unreasonable.

*By the Court.*—Order affirmed.