**Harold E. SIVARD, Jr.,
Plaintiff–Appellant,**

v.

**PULASKI COUNTY, Pulaski County Sheriff's Department, Charlotte Ward–Tillett, individually and in her official capacity, Defendants–Appellees.**

No. 93–1033.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 1993.
Decided Feb. 16, 1994.

Grace H. Han, Sipe, Pankow, Han & Free, Indianapolis, IN, for plaintiff-appellant.

Frank E. Tolbert, John S. Damm, Miller, Tolbert, Muehlhausen, Muehlhausen & Groff, Logansport, IN, for defendants-appellees.

Before PELL, CUDAHY, and EASTERBROOK, Circuit Judges.

PELL, Circuit Judge.

Harold E. Sivard, Jr., appeals the district court's grant of summary judgment to Pulaski County, the Pulaski County Sheriff's Department, and Sheriff Ward–Tillett on his claim for wrongful detention under 42 U.S.C. § 1983. We affirm.

I.

In December, 1986, a grand jury of the Commonwealth of Massachusetts indicted Sivard for the crime of kidnapping. On February 2, 1987, Deputy Sheriff John Duhnovsky of the Pulaski County Sheriff's Department arrested Sivard without a warrant for the Indiana crime of misdemeanor battery. Sivard was held in the Pulaski County jail without being charged before a judicial officer from February 2 until February 19, 1987. On February 19, Daniel P. Murphy, the prosecuting attorney of Pulaski County, filed battery charges against Sivard, who appeared in person for an initial hearing. Sivard was unable to post the bond of $2,500 and therefore remained in custody.

On March 3, 1987, Massachusetts issued an arrest warrant for Sivard on charges of kidnapping, assault and battery with a deadly weapon, and assault with a deadly weapon. On March 24, 1987, Sivard suffered a back injury while preventing a fellow prisoner from hanging himself. The same day, Sivard waived extradition to Massachusetts. Three days later, on March 27, 1987, Sivard was extradited to Massachusetts. Indiana dismissed the battery charges on April 2, 1987.

Sivard's amended complaint arose under 42 U.S.C. § 1983 and alleged that the defendants Pulaski County, the Pulaski County Sheriff's Department, Sheriff Charlotte Ward–Tillett, and Dr. John Doe (later identified as Rex Allman, M.D.) violated his rights and privileges under the Fourteenth Amend-

ment to the United States Constitution.[1] Sivard sought relief for wrongful detention between February 2 and March 27, 1987, negligent and willful failure to provide him with timely medical care, and Dr. Allman's misdiagnosis of his back injury.

The district court granted summary judgment for the defendants on all claims, and Sivard appealed. We reversed the district court's judgment on the wrongful detention claim, and held that (1) the fact that Sivard's warrantless arrest was based on probable cause did not preclude his § 1983 claim for wrongful detention following that constitutional arrest, *Sivard I,* 959 F.2d at 665; (2) genuine issues of material fact remained concerning the wrongfulness of Sivard's seventeen-day detention, *id.;* (3) the seventeen-day detention of Sivard stated a claim under the Fourth Amendment in sufficient terms to preclude summary judgment, *id.* at 667–68; (4) the defendants' admission that Sivard was detained without charge for seventeen days established Sheriff Ward–Tillett's potential liability in either her personal or official capacity, *id.* at 668; and (5) the inexplicable nature of Sivard's detention made it possible that some official policy or custom was the cause the detention, *id.* at 668–69. We affirmed the judgment on Sivard's claims for delayed medical treatment and Dr. Allman's alleged malpractice. *Id.* at 669.

On remand, the defendants again moved for summary judgment, supported by the affidavits of Duhnovsky, Murphy, Pulaski County Deputy Prosecuting Attorney Lisa Traylor–Wolff, and Sheriff Ward–Tillett. Sivard filed no written response but presented argument at the hearing on the motion. The district court granted the defendants' motion. *Sivard v. Pulaski County,* 809 F.Supp. 631, 642 (N.D.Ind.1992). The district court found that summary judgment for Pulaski County, the Pulaski County Sheriff's Department, and Sheriff Ward–Tillett in her official capacity was appropriate because Sivard failed to present facts showing a municipal custom or

---

1. Sivard originally brought a diversity suit, under state law only, against the defendants. The district court dismissed the lawsuit for failure to provide the defendants with timely notice as required by the Indiana Tort Claims Act, and allowed Sivard to amend his pleadings. *Sivard v.*

*Pulaski County,* 959 F.2d 662, 664 (7th Cir.1992) (*"Sivard I"*). Sivard amended his complaint to allege a violation under 42 U.S.C. § 1983 by the defendants for the identical wrongful acts alleged in the original complaint. *Id.*

policy. *Id.* at 640–41. The district court also granted summary judgment for Sheriff Ward–Tillett in her personal capacity under the doctrine of qualified immunity. *Id.* at 642. Sivard appeals from this judgment.

## II.

We review the district court's grant of summary judgment *de novo,* applying the same standards as the district court. *Sivard I,* 959 F.2d at 664. Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A. Presence of a Municipal Policy or Custom

■■■ A municipality may not be held liable under § 1983 on a theory of *respondeat superior. Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. There must be an "affirmative link" between the policy and the alleged constitutional violation. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident also includes proof that it was caused by an existing, unconstitutional municipal policy." *Id.* at 823–24, 105 S.Ct. at 2436–37. A municipal policy or custom is a necessary requirement to establishing liability in a defendant's individual or official capacity. *Sivard I,* 959 F.2d at 668; *Rascon v. Hardiman,* 803 F.2d 269, 273–74 (7th Cir. 1986). "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 202 (7th Cir.1985).

Sivard's complaint alleges that Sivard "was wrongfully detained pursuant to the policy and custom of the defendants." The complaint also alleges that Sivard's "injury and wrongful detention were a direct result of the Defendant Pulaski County, Pulaski County Sheriff's Department, and Charlotte Ward's actions, custom, and policy." In *Sivard I,* we described these allegations as approaching "the level of boilerplate vagueness that this Court has ruled should not survive summary judgment." *Sivard I,* 959 F.2d at 668. Nevertheless, we reversed the grant of summary judgment because of the "inexplicable nature of Sivard's detention." *Id.* at 669.

The affidavits submitted with the defendants' second motion for summary judgment eliminate the inexplicable nature of Sivard's detention. The affidavits of Deputy Sheriff Duhnovsky and Sheriff Ward–Tillett establish that on February 2, 1987, the date of Sivard's arrest, the Pulaski County Sheriff's Department and Sheriff Ward–Tillett knew that Sivard was wanted on kidnapping charges in Massachusetts. The affidavit of Pulaski County Prosecuting Attorney Murphy reveals that on February 4, 1987, Murphy knew that Massachusetts authorities wished to extradite Sivard and would be providing the necessary documentation as quickly as possible, including a certified copy of the warrant of indictment. Murphy's affidavit further states that between Sivard's arrest and February 19, "there were a number of contacts made with the Massachusetts authorities by the Pulaski County Sheriff's Department," and Murphy's Deputy Prosecuting Attorney, Traylor–Wolff. Thus, by February 4, all the defendants knew of the indictment of Sivard and that Massachusetts wished to extradite him.

■■■ Sivard argues that the affidavits are too vague to eliminate the inexplicable nature of his detention because they do not indicate that the defendants ever attempted to obtain copies of the Massachusetts indictment and extradition request. Murphy's affidavit does not specify how he learned of Massachusetts' extradition request, or the "number of contacts" he made with the Massachusetts authorities between February 2–19, 1987. Sivard argues that the only specific evidence of

contacts between Pulaski County and Massachusetts are the two telephone calls made by Duhnovsky to the West Springfield, Massachusetts, Police Department on February 2, 1987.

Sivard's arguments are without merit. In *Sivard I*, we did not require that the defendants describe in detail every contact between the Pulaski County and Massachusetts authorities. *Sivard I*, 959 F.2d at 668. Rather, we merely required that the defendants answer the questions of "when, and how, Pulaski County officials inquired into and learned of the Massachusetts indictment of Sivard (and, later, the warrant for his arrest)." *Id.* The defendants have done this.

Sivard has continued to rest upon mere conclusory allegations concerning the existence of a municipal custom or policy without any factual support. The record contains no evidence of a custom or policy of the defendants of unconstitutionally detaining persons arrested without a warrant, much less unconstitutionally detaining such persons upon oral requests for extradition. This is precisely what the Supreme Court in *Tuttle* held to be insufficient to establish a municipal custom or policy under *Monell. Tuttle*, 471 U.S. at 823–24, 105 S.Ct. at 2436–37. Therefore, the district court properly granted summary judgment to Pulaski County, the Pulaski County Sheriff's Department, and Sheriff Ward–Tillett in her official capacity because of Sivard's failure to establish a municipal policy or custom.

### B. Qualified Immunity of Sheriff Ward–Tillett

An analysis of qualified immunity is appropriate only after resolution of the purely legal question of whether Sivard has alleged a violation of a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The issue was definitively resolved in *Sivard I*, where we held that Sivard's claim of wrongful detention was legally sufficient to allege a violation of the Fourth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, by the defendants

under 42 U.S.C. § 1983. *Sivard I*, 959 F.2d at 669.

■ Qualified immunity is an affirmative defense which must be pleaded by a defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). In *Harlow*, the Supreme Court held that "government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The contours of a "clearly established" right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The level of generality at which the relevant legal rule is to be identified may not be so abstract that the rule of qualified immunity is converted into a rule of virtually unqualified liability. *Id.* at 639, 107 S.Ct. at 3038. The "very action in question" need not have previously been held unlawful, but, in the light of pre-existing law, the unlawfulness of the action must be apparent. *Id.* at 640, 107 S.Ct. at 3039. A prior case that is "precisely on all fours on the facts and law involved here" is not required. *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992) (quoting *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 676 (7th Cir.1990)). "Nonetheless, '[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established.'" *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.) (quoting *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988)), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

■ Sivard relies on the decision of the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), as clearly establishing that his seventeen-day detention from February 2 through 19, 1987, without an initial appearance before a judicial officer violated the Fourth Amendment. In *Gerstein*, the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a

prerequisite to an extended pre-trial detention following a warrantless arrest. *Gerstein,* 420 U.S. at 125, 95 S.Ct. at 869. The Court expressly declined to extend its holding to defendants who had been indicted, stating that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Id.* at 118 n. 19, 95 S.Ct. at 865 n. 19 (quoting *Ex parte United States,* 287 U.S. 241, 250, 53 S.Ct. 129, 132, 77 L.Ed. 283 (1932)). Although Sivard was arrested by the Pulaski County Sheriff's Department without a warrant, he had been indicted in a facially valid indictment by a "properly constituted grand jury" of Massachusetts at the time of his detention. As the affidavits of the defendants make clear, his seventeen-day detention by Sheriff Ward–Tillett occurred pursuant to Massachusetts' oral request for extradition. Under *Gerstein,* the question then is whether the Massachusetts indictment, which would have been sufficient for officials of Massachusetts to detain Sivard for seventeen days without an initial appearance before a judicial officer, was also sufficient for the Pulaski County Sheriff's Department to detain Sivard in the same circumstance. To determine whether the indictment was sufficient to justify the detention under *Gerstein,* we must examine the law of extradition.

The Extradition Clause of the Constitution of the United States establishes the duty of a State to extradite a person to another State. The Clause provides:

A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Art. IV, § 2, cl. 2. To implement the Clause, Congress enacted the Extradition Act of 1793, 18 U.S.C. § 3182, which requires the State which is demanding a fugitive from another State to produce a copy of the indictment or an affidavit certified as authentic by the governor or chief magistrate of the State.[2]

Massachusetts did not provide the Pulaski County Sheriff's Department with either a copy of the indictment or an affidavit certified by the governor or chief magistrate. The extradition request of Massachusetts was based solely on an oral representation that Sivard had been indicted. The Supreme Court has stated that a fugitive such as Sivard may be detained by an asylum State "for the reasonable time necessary to enable a requisition to be made." *Stallings v. Splain,* 253 U.S. 339, 341, 40 S.Ct. 537, 538, 64 L.Ed. 940 (1920). The period of seventeen days was well beyond the reasonable time necessary for Massachusetts to send the documentation required under 18 U.S.C. § 3182 to Pulaski County. Sivard, however, has not alleged that his rights under the Extradition Clause were violated, nor has Sivard alleged a violation of 18 U.S.C. § 3182. What Sivard has alleged is a violation of the Fourth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, and the law in this area is much less clear.

---

**2.** The Extradition Act provides in its current form:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182. The Extradition Clause has also been implemented by the Uniform Criminal Extradition Act ("UCEA"), which, where adopted, governs state extradition procedures, in conjunction with overriding federal law. *Michigan v. Doran,* 439 U.S. 282, 288–89, 99 S.Ct. 530, 535–36, 58 L.Ed.2d 521 (1978); *Coungeris v. Sheahan,* 11 F.3d 726, 727 (7th Cir.1993). Indiana has adopted the UCEA. Ind.Code § 35–33–10–3 (1988).

The leading decision of the Supreme Court interpreting the Extradition Clause is *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). In *Michigan v. Doran*, the Court stated that interstate extradition is "intended to be a summary and mandatory executive proceeding" derived from the language of the Extradition Clause. *Michigan v. Doran*, 439 U.S. at 288, 99 S.Ct. at 535 (1978). "The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." *Id.* The Court did not address the extent to which the Fourth Amendment applies to extradition proceedings.[3] *See id.* at 293 n. 3, 99 S.Ct. at 537 n. 3 (Blackmun, J., concurring). Instead, the Court merely assumed that the Fourth Amendment was applicable, and stated that "when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review that determination." *Id.* at 290, 99 S.Ct. at 536. We read this language as casting serious doubt on the applicability of *Gerstein* to a detention of an indicted fugitive pursuant to an oral extradition request, because a "statement in the demanding papers that there has been a finding of probable cause is no more conclusive than would be the absence of such a statement. It is the actual fact, not the statement or lack of a statement that, in the end, matters." *Zambito v. Blair*, 610 F.2d 1192, 1196 (4th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980).

Although we doubt whether *Gerstein* applies to the detention of Sivard, we do not need to decide the merits of Sivard's Fourth Amendment claim.[4] Under the doctrine of qualified immunity, our inquiry is limited to whether a reasonable sheriff would understand that Sivard's seventeen-day detention in 1987 violated his "clearly established" Fourth Amendment rights under *Gerstein*.

*Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The answer is "no." In light of *Michigan v. Doran*, the applicability of *Gerstein* to such a detention is uncertain, and we have found no federal authority, before or after 1987, extending *Gerstein* to this situation. Therefore, *Gerstein* does not clearly establish that Sivard's detention violated the Fourth Amendment.

Sivard relies on our decision in *Coleman v. Frantz*, 754 F.2d 719 (7th Cir.1985), as clearly establishing that his detention was unconstitutional. In *Coleman*, we held that an eighteen-day detention of the plaintiff who was arrested pursuant to a warrant without an appearance before a judicial officer was a deprivation of liberty without due process of law. *Coleman*, 754 F.2d at 723. *Coleman* is distinguishable from this case because *Coleman* did not involve an extradition proceeding, and, as *Michigan v. Doran* indicates, the Fourth Amendment applies, if at all, in only a limited sense to extradition proceedings. *Michigan v. Doran*, 439 U.S. at 290, 99 S.Ct. at 536. *Coleman* is also distinguishable because, unlike Sivard, the plaintiff in *Coleman* had not been indicted by a "properly constituted grand jury." *Gerstein*, 420 U.S. at 118 n. 19, 95 S.Ct. at 865 n. 19. Therefore, *Coleman* does not clearly establish that Sivard's seventeen-day detention was unconstitutional.

Sivard has pointed to no case before 1987 (or after) clearly establishing that the detention of a properly-indicted fugitive pursuant to an oral extradition request violates the Fourth Amendment. We have been unable to find any such case. A reasonable sheriff acting in 1987 would not have understood that the law "clearly established" that the detention of an indicted fugitive based on an oral extradition request violated the Fourth Amendment. Sheriff Ward–Tillett is there-

**3.** Subsequent decisions of the Supreme Court interpreting the Extradition Clause are no more illuminating concerning the applicability of the Fourth Amendment to extradition proceedings. *See, e.g., Puerto Rico v. Branstad*, 483 U.S. 219, 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987); *California v. Superior Court of California*, 482 U.S. 400,

107 S.Ct. 2433, 96 L.Ed.2d 332 (1987); *Pacileo v. Walker*, 449 U.S. 86, 101 S.Ct. 308, 66 L.Ed.2d 304 (1980).

**4.** *Benson v. Allphin*, 786 F.2d 268, 279 n. 26 (7th Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986).

fore qualifiedly immune from liability in damages.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.