**LUIS MELENDEZ, Petitioner**

**v.**

**ERIC BROWNE — Warden of Anna's Hope Detention Center,
and
GOVERNMENT OF THE VIRGIN ISLANDS, Respondents**

Civil No. 979/1994

Territorial Court of the Virgin Islands

Div. of St. Croix

February 6, 1995

AMELIA B. JOSEPH, ESQ., St. Croix, V.I., *for petitioner*

HAROLD W. L. WILLOCKS, (Territorial Public Defender), St. Croix, V.I., *for petitioner*

DUDLEY HUGHES, ESQ., (Assistant Attorney General, Department of Justice), St. Croix, V.I., *for respondent*

ANDREWS, *Judge*

## MEMORANDUM OPINION AND ORDER

The main issue before the Court is whether a ten-week detention, following a warrantless arrest of a fugitive, without being taken before a judge, is illegal and thus requires custodial release. Luis Melendez, the petitioner herein, challenges his detention via a Writ of Habeas Corpus, and asserts that his Due Process rights were violated. The Government responds that Melendez' lengthy detention does not warrant his release since it did not exceed the 90-day detention limit permitted by the Criminal Extradition Statute (the Statute). For the reasons stated below, this Court finds that Melendez' Due Process rights were violated, and will order his immediate release from custody.[1]

---

[1] Hearings on the writ were held on January 18 and 25, 1995. At the January 25th hearing, this Court ruled that Melendez' detention did not warrant his release for the same reasons asserted by the Government. Further research and analysis however, convinced the Court that its previous ruling was in error. Therefore, on January 30, 1995, the Court

## FACTUAL BACKGROUND

Luis Melendez was convicted and sentenced, in the District Court of the Virgin Islands, to six (6) years of incarceration on March 19, 1990 for burglary and grand larceny. He was incarcerated in the St. Croix division of the Bureau of Corrections (B.O.C.). Subsequently, the Michigan Department of Corrections notified the B.O.C. by letter dated April 9, 1990, that "Luis Melendez" was wanted for escape from the Detroit Trumbull Corrections Center. They submitted an administrative arrest warrant with the letter, and requested six month's notice of Melendez' scheduled release date in order to prepare for his extradition.

In September, 1994 Melendez was granted parole and released from the custody of the B.O.C. despite the existence in its file of documents evincing Michigan's desire for his extradition. He was arrested on November 4, 1994, without a warrant, and taken into custody based on the information that he was wanted for the Michigan escape. Two weeks later, on November 28, 1994, the Government filed a complaint praying for the issuance of a detention warrant pending extradition to Michigan. Melendez filed his Writ of Habeas Corpus on December 5, 1994. He was not brought before a judge, nor did he receive a hearing, until January 18, 1995, ten weeks after his November 4th arrest.[2] As of January 30, 1995, the Governor's warrant had not been issued, nor had formal requisition documents been received from Michigan. There is no evidence that Melendez was charged in Michigan with the escape.

## LEGAL ANALYSIS

Melendez argues that his release is mandated because: 1) he was not brought before a judge "with all practicable speed" subsequent to his warrantless arrest, and was detained beyond the maximum period authorized by the Statute, i.e., sixty (60) days; and 2) the complaint and supporting documents filed by the Government do

reversed its January 25th ruling, ordered Melendez' release, and informed that it would further explain its ruling by written opinion.

[2] A hearing was scheduled on the writ for December 15, 1995. However, the matter was continued and not rescheduled until the middle of January.

not meet the requirements set out by 5 V.I.C. Section 3813. The Government acknowledges that there has been some delay in securing a warrant and argues that the defendant could legally have been held until February 4, 1995, pursuant to 5 V.I.C. 3815 and 3817, even if he was brought before a judge immediately upon his arrest on November 4, 1994. These issues require a brief review of the Virgin Islands Criminal Extradition Statute and applicable law.

■ Criminal extradition in the Virgin Islands is governed by Title 5, Virgin Islands Code, Section 3801, et. seq. The Statute is derived from the Uniform Criminal Extradition Act which some states have adopted. Section 3814 of the Statute permits the warrantless arrest of a person upon reasonable information that the person stands charged in a state with a felony. However, once arrested, such a person must be taken before a judge "with all practicable speed", and a complaint must be made under oath setting forth the basis for arrest as provided in Section 3813. 5 V.I.C. 3814. If, at the first appearance hearing, the arrestee's identity and fugitive status is established, the Court must commit the arrestee to jail, via a detention warrant, for no more than thirty (30) days, unless bail is given. 5 V.I.C. 3815. The purpose of this detention, or bail period, is to allow time for receipt of a requisition from the demanding state and issuance of the Governor's warrant. 5 V.I.C. 3815.

■■ Where the Governor's Warrant is not secured within the time specified in the court's warrant or bail bond, the person may be discharged, or recommitted (or given bail) for another period not to exceed sixty days. 5 V.I.C. 3817. This Court concludes, contrary to Petitioner's position, that the language in Section 3817, "for a further period not to exceed sixty days" signifies that the Court may extend a person's commitment for up to sixty days beyond the initial thirty days permitted by Section 3815. Thus the statutory scheme contemplates a ninety-day period, after first appearance, to secure the Governor's warrant. This interpretation the Court obtains from a plain reading of the unambiguous language of the Statute. Licata v. U.S. Postal Service, 33 F.3d 259, 261 (3d Cir. 1994). Other jurisdictions with virtually identical extradition statutes have held likewise. State v. Holliman, 247 Mont. 365, 805 P.2d 52, 53 (Mont. 1991); Commonwealth v. Storms,

350 Pa. Super. 228, 504 A.2d 329 (Pa. Super. Ct. 1986); Alliey v. Lamm, 711 P.2d 1258, 1260 (Colo. 1986). Thus Melendez' detention did not exceed the maximum permissible statutory limit.

■ This conclusion far from ends the Court's inquiry however. The fact remains that Petitioner was entitled to be taken before a judge "with all practicable speed" for a first appearance hearing. This hearing serves to safeguard the Constitutional rights of arrestees by ensuring that they receive: 1) a prompt probable cause determination that they are the person alleged to have committed the crime in the demanding state and have fled from justice; and 2) a prompt determination of bail.[3] See 5 V.I.C. 3815. As with any first appearance, such a hearing further safeguards Constitutional rights by ensuring that arrestees are advised of: 1) the charges against them; and 2) their right to silence and the possible use of their statements against them, their right to counsel, and their right to appointed counsel if indigent.[4] See, Terr.Ct. Rule 123(a) and (c); See also, Coleman v. Frantz, 754 F.2d 719, 724 (7th Cir. 1985).

■ An extensive detention prior to first appearance seriously threatens these basic rights, and destroys an underlying concept of the criminal justice system, that is, the presumption of innocence. Frantz, 754 F.2d at 724. Where such a detention is found to be unreasonable it amounts to a denial of Due Process. It further voids the proceedings by which the arrestee was incarcerated and requires the arrestee's release. U.S. Const. amend. XIV, § 1. Other jurisdictions with almost identical extradition statutes have concluded likewise. State v. Hughes, 68 Wis. 2d 662, 229 N.W.2d 655, 663 (Wis. 1975); Caudill, 352 P.2d 926, 929 (Okl. Crim. App. 1960); Great American Indemnity Company v. Beverly, 150 F.Supp. 134, 140 (M.D.Ga. 1956). Whether an extensive detention is reasonable

---

[3] These concerns implicate the Fourth and Eight Amendments. The Fourth Amendment however, is involved only to the extent that probable cause must be found as to an alleged fugitive's identity and fugitive status. Compare, Sivard v. Pulaski County, 17 F.3d 185, 191 (7th Cir. 1994) (Expressing doubt as to full applicability of Fourth Amendment to extradition proceedings). There is no requirement, in extradition cases, that a reviewing court find probable cause relative to commission of the offense in the demanding state. Michigan v. Doran, 439 U.S. 282, 99 S.Ct. 530, 535, 58 L. Ed. 2d 521 (1978). Here however, a more substantial Fourth Amendment concern is implicated since there is no evidence that Melendez was indicted by a grand jury or otherwise charged in Michigan with escape.

[4] These concerns implicate the Fifth and Sixth Amendments.

depends on the circumstances of each case. See *Hughes*, 229 N.W.2d at 663; Caudill, 352 P.2d at 928; Beverly, 150 F.Supp. at 140. The Supreme Court has held that a 48-hour pre-appearance detention, following a warrantless arrest, would generally conform to Constitutional standards. County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 1670, 114 L. Ed. 2d 49 (1991). Thereafter, the Government carries the burden of proving reasonableness by establishing that a bona fide emergency or other extraordinary circumstance existed. Id. at 1670. The Government should carry the same burden in cases, such as here, where a fugitive is arrested without a warrant and subjected to an extensive pre-appearance detention.

■ There is no reasonable excuse for the delay in this case. The government had notice of Petitioner's fugitive status since April, 1990, four years before his September, 1994 release. Nothing prevented it from obtaining the necessary documents from Michigan to file a fugitive complaint prior to Petitioner's release. Even after his November 4th arrest, no complaint was filed until November 28, 1994, though the government had the necessary documents in its possession, ie., an Administrative Warrant, the Judgment and Sentence, and an Information Sheet, since November 15, 1994. See Government's Response to Petition for Habeas Corpus (Supporting Documents). The filing of the complaint, however, is not enough. It was mandatory that Petitioner be physically taken before a judge "with all practicable speed". Nothing stated by the Government even begins to explain its utter failure to comply with the statutory dictates.[5] No bona fide emergency or other extraordinary circumstance has been presented. This Court is thus forced to, and does hold, that Melendez' ten-week detention was highly unreasonable and amounts to a denial of his Due Process rights. The law thus mandates his immediate release. See, Caudill, 352 P.2d at 929 (Finding 6-day delay unreasonable); Beverly, 1150 F.Supp. at 140 (Finding 14-day

---

[5] The Government contended at the January 18th hearing, that an extension pursuant to Section 3817 was needed because the Court continued the December 15th hearing. See Note 2, *supra*. That continuance however, did not hinder in the least the government's ability to produce Melendez "with all practicable speed". Further, it certainly does not relieve the Government of its statutory obligation under 5 V.I.C. 3814. This contention is thus without merit.

delay unreasonable); See also, Sivard v. Pulaski County, 809 F.Supp. 631, 639 (N.D.Ind. 1992) (Finding 17-day delay unreasonable); But see, Sivard v. Pulaski County, 17 F.3d 185, 191 (7th Cir. 1994) (Expressing doubt as to full applicability of Fourth Amendment to extradition proceedings).

The government argues that Melendez is not entitled to release since he legally could have been held until February 4, 1995 even if he was taken before a judge immediately upon his November 4th arrest. Thus, the argument continues, the Government should be permitted to hold him until February 4th despite the ten-week delay. Such a reading of the Statute would cleanly sweep away any significance of the provision in Section 3814 requiring a prompt initial appearance, and boldly abrogate legislative intent. It would permit a significant restraint on the liberty rights of arrestees without due process of law. Such a position is plainly untenable under applicable law.

At the January 25th hearing, the Court ruled that the Government's complaint met the requirements of Section 3813. In light of the foregoing, however, that issue need not be reached.

### CONCLUSION

The delay in this case constituted a denial of Melendez' Constitutional right to due process of law. Accordingly, the Court will grant the writ and order Melendez' immediate release from custody.

### ORDER

In accordance with memorandum opinion entered in this matter, it is hereby

ORDERED that LUIS MELENDEZ shall be released from the custody of the Bureau of Corrections forthwith.